Ruffin, Chief Justice,
 

 after stating the case, as above, proceeded: — The point principally insisted on for the defendants is, that the plaintiffs could not recover for the injury to their new machinery. It has not been denied
 
 *53
 
 here, that a party cannot obstruct a stream below, so as to prevent the water from escaping, as it naturally would, and thereby pour it back upon the land or mill of another, simply, because those consequences do not exist at all times, ordinarily, but only when the stream is swollen. We think it clear, that circumstance can only affect the quantum of damage, and does not excuse the party altogether. One has the right at
 
 no
 
 time to prevent the water flowing from the land of a proprietor above, as it has usually done, more than the proprietor above has the right to divert the stream, so as to prevent it from flowing to him below. The question, in any state of the stream, is, whether a person owning land on it, and thereby entitled to certain beneficial uses of the water, has been deprived, by means of the acts of another, of some' of those uses which, but for those acts, he would enjoy in that particular state of the stream. If so, he has sustained some injury, and is entitled to recover the damages, although they be not so great, as if the injury were more frequent, or of longer duration.
 

 when the spectively as in the preserip-tive rights, the applica
 
 *54
 
 tion of the water of a stream to some particular and useful purpose, is an appropriation of it, which gives the right to the perpetual use of it in the same way, against all persons who may not have previously applied it to some other use inconsistent therewith.
 

 
 *53
 
 The proposition of the defendants’ counsel in this court, rests on the facts, that although the plaintiffs’ mill might be older than the defendants’, yet their improvements were subsequent to the' erection of the defendants’ mill; and, therefore, the defendants are not responsible for the inefficiency or inutility of those improvements. It is contended, that the application of the water of a stream to some particular and useful purpose, is an appropriation of it, which gives the right to the perpetual use of it in the same way, against all persons who may not have previously applied it to some other use inconsistent therewith. In other words, that running water is
 
 piiblici juris,
 
 and that the first use of it gives the better title to it.
 

 There are
 
 dicta
 
 in the cases cited by the defendants’ counsel, to give colour to his position, and we take the position itself to be strictly true, when the parties claim respectively upon their possession. He who claims a thing, because he has possessed or used it in a particular way, can claim to use it longer, in no other. The argu-men t of the counsel, however, assumes, that the right to
 
 *54
 
 water can be acquired only by use; and therein, we think, consists its error. The
 
 dicta
 
 on which he relies • had reference to ,the cases of prescriptive title, or where • the party had only the rights of a possessor. But it is not true, that the right to water is acquired only by its use, and that it cannot exist independent of any particular use of it. That doctrine is correctly applied- to the air and to the sea, or such bodies of water, as from their immensity, cannot be appropriated by individuals, or ought to be kept as common highways for the constant uses of the country, and the enjoyment of all men. In such cases, particular persons cannot acquire a right— that is, a several and exclusive right, by use or any other means. But with smaller streams it is otherwise. They may still be
 
 publici juris,
 
 so far as to allow all persons to drink the water, and the like; and also, so far as to prevent a person to whose land it comes from thus consuming it entirely, by applying it to other purposes than those for which it is conceded to every
 
 one
 
 — ad
 
 lavandum et
 
 potandum,,- as to divert it or corrupt it. But while the use of running water in such streams is thus reserved to all men, for the purposes of preserving life and rendering existence comfortable, to only a very few is any other use reasonable; and as to those few only ought it therefore to be legal. Its use, for instance, in propelling machinery, cannot be obtained by any person, but one who owns the land which the water covers, or which forms its panics, or by one to whom such proprietor grants it; because it is physically impossible to get the water in any other way. But the owners of the land may have those uses of it; and as they are beneficial uses — beneficial, not only as sources of private gain, but therein also of public utility —it is reasonable, and ought therefore to be lawful, that the owners of the land should, as such, be entitled to the advantage of all those profitable uses of the water, which do not afifect it as the aliment pi-ovided by nature to nourish animal life. We conceive, therefore, that it is the clear doctrine of the common law, that all the owners of land through which a stream, not navigable, runs, may apply it to the purposes of profit. The rights claimed by
 
 *55
 
 these defendants themselves have no other foundation. The only question, then, is, what are the rights of the owners above and below on a stream, as against each other ? The defendants say, that such one of the owners as may first apply the water to any particular purpose, gains thereby, and immediately, the exclusive right to that use of the water. That is true, in this sense, that any other proprietor, above or below, cannot do any act whereby that particular enjoyment would be impaired, without answering for the damages which are occasioned by the loss of the particular enjoyment. Whereas before the particular application of the water to that purpose, the damages would not have included that possible application of the. water, but been confined to the uses then subsisting. But to render the proposition even thus far true, the use supposed must be a legitimate one; that is, it must not interfere with any previously existing right in another proprietor; for usurpation does not justify itself. If one build a mill on a stream, and a person above divert the water, the owner of the mill may recover for the injury to the mill, although before he built he could only recover for the natural uses of the water, as needed for his family, his cattle, and irrigation. But if, instead of building a mill, he had diverted the stream itself, he cannot justify it against a proprietor below, upon the ground, that he had thus made an artificial use of the water, before the other had made any such application of it. The truth is, that every owner of land on a stream necessarily and at all times is using water running through it — if in no other manner, in the fertility it imparts to his land, and the increase in the value of it. There is therefore no prior or posterior in the use; for the land of each enjoyed it alike from the origin of the stream; and the priority of a particular new application or artificial use of the water does not therefore create the right to that use; but the existence or non-existence of that application at a particular time, measures the damages incurred by the wrongful act of another, in derogation of the general right to the use of the water, as it passes to, through, or from the land of the party complaining. The right is not founded in
 
 *56
 
 user, but is inherent in the ownership of the soil; and when a title by use is set up against another proprietor, there must be an enjoyment for such a length of time as will be evidence of a grant, and thus constitute a title under the proprietor of the land.
 

 
 *55
 
 There is no prior or posterior in the use of the water, by the owners of the land on a Stream; arid the priority of a particular new application, or 'artificial
 
 *56
 
 , use of the / water, does /. not there- ' fore create ,w,the right to '
 
 T*
 
 that use ; but the fe-istence or • non-existence of that application at a particular time, measures the damages incurred by the wrongful act of another, in derogation of the general right to the use of the water, as it passes to, through, or from the land of the party complaining.
 

 ' These positions are explained with great learning, and laid down with marked precision, by Chief Justice Den-man, in delivering the opinion of the Court of King’s Bench, in the recent case
 
 of Mason
 
 v.
 
 Hill,
 
 Hilary Term, 1833, 5 Barn. & Adolph. 1. The court had in the previous year decided the same question in the same way between those parties.
 
 Mason
 
 v.
 
 Hill,
 
 3 Barn, and Adolp. 304. The defendant erected a mill in 1818, and by means of a dam diverted some of the water that ran into the stream into a reservoir, for the use of his mill. In 1823, the plaintiff erected a mill on his own land and below, on the same stream; and 1828 pulled down the dam of the defendant, by means of which the water had been diverted, and gave the defendant notice not to divert the water. But in 1829 the defendant built another dam, by which he cut off the water of several springs that formerly flowed into the stream, and the plaintiff brought jiis action. Upon the first trial, there was a verdict for the
 
 defendant;
 
 but a new trial was granted by the unanimous opinion of the court, delivered by Lord TenteRden, upon the ground, that the defendant could not by law acquire a right to the water by the prior use of it, unless the enjoyment was undisturbed for twenty years. Upon the next trial, the question was raised in the most solemn form, by special verdict, and elaborately discussed at the bar; and after time taken by the court, the judgment was in a masterly manner pronounced by Chief Justice Denman. Although there are
 
 dicta
 
 by some of the judges in the older cases, which seem to be against this principle, we believe there is no decision against it. In
 
 Bealy
 
 v.
 
 Shaw,
 
 6 East’s Rep. 208, the observation of Mr. Justice Le Blanc was not called for, and is not sanctioned by the other members of the court; and the decision is in accordance with the principle, that the owner of land through which a stream flows, may, whenever he applies it bene
 
 *57
 
 ficially, maintain an action for diminishing that benefit, by diverting the stream above. Lord Ellenborough explicitly states the right of every man to have the advantage of a flow of water in his land, without diminution or alteration, unless the occupation of another has been for so long a time, as to raise the presumption of a grant. In
 
 Williams
 
 v.
 
 Morland, 2
 
 Barn. & Cres. 910, there was no complaint that the defendant had diminished the quantity of water, or corrupted its quality, by building his .dam, and thereby affected any use the plaintiff'could'enjoy. The declaration was for erecting a dam above, whereby the water ran in a different channel, and with greater violence, and injured the banks and premises of the plaintiff; which consequences the jury negatived by their verdict. It was therefore necessarily held, that the verdict was right; for the defendant had a right to stop the water, if it did no damage to the plaintiff, and he alleged but one manner of injury, and that was found against him, in point of fact.
 

 If such be the law, in reference to diverting a watercourse above, so that a proprietor below is deprived of some of the uses of the water to which he may apply and is endeavouring to apply it, much more clearly is the proprietor above entitled to recover, when the water is obstructed below. In this last case, the owner above is not only deprived of the use of
 
 the water,
 
 to which he is entitled naturally, as well as others above or below him, but the water is thrown out of the natural channel, and by being raised, covers a part of
 
 his soil,
 
 which the natural current of the stream would not touch. Now, no person can, for
 
 the
 
 sake of giving himself a use of the water, justify throwing it back upon the land of another, so as to deprive him of
 
 any
 
 use of
 
 his land,
 
 whether for cultivation, the erection of machinery, or other buildings. Pond-ing water back on land above, seems to be so clear and direct an invasion of the proprietary interest in the land itself, independent of the right to use the water, as certainly to be a good cause of action, unless there be a grant of the easement; and if there be no grant in fact, the action must lie at all times at which the owner wishes to
 
 *58
 
 apply
 
 his land
 
 to a more beneficial purpose, unless he has permitted the other to enjoy so long, as to amount to a grant in law. In
 
 Saunders
 
 v.
 
 Newman,
 
 1 Barn. & Ald. 258, the plaintiff’ declared, as the possessor of a mill, and not as the owner of the land, that the water had been used to flow from it in its usual and natural channel, and that the defendant erected and kept a dam for a mill of his own below, whereby the water which ought to have flowed and escaped from the mill of the plaintiff, was prevented from escaping as it would otherwise have done, and was forced back against the wheel of his mill. The case, upon the trial, was, that the plaintiff’s was an old mill of many years’ standing; but that shortly before the suit, he erected a new wheel, of different dimensions from the old one, but upon the same level. The judge who presided at the trial, nonsuited the plaintiff, upon the ground that he declared upon his possession, and could only maintain the action, by a! medium of proof, that if the old wheel had remained, the acts of the defendant would have injured him in that state; and that as he had thought proper to alter it, and make a wheel different from the old one, the evidence of his right was gone: but the whole court thought otherwise; and held, as the plaintiff had not stated his right to be in respect of a mill of a given construction, that he was entitled to his action, as laid. For although the plaintiff declared on his possession only,
 
 yet
 
 that being for a long time, it gave him a right that the water should continue to flow to and from his mill, in the manner in which it had been accustomed to flow; and the owner was not bound to use the water in the same precise manner, or apply it to the same mill: if he were, that would stop all improvements in machinery. The court, indeed, add, that if the alterations prejudiced the lower mill, that would be different. But that is manifestly in reference to the limited right of the plaintiff as the possessor merely, which could only authorize the use of a particular quantity of water on a particular level. The particular point now before us was clearly stated and ruled by Sir John Leach, when Vice-chancellor, in
 
 Wright
 
 v.
 
 Howard,
 
 1 Sim. & Stu. 190. He says, that
 
 *59
 
 the right to the use of water rests on clear and settled principles.
 
 Prima facie,
 
 the proprietor of each bank of a stream, is the proprietor of half the land covered by the stream; but there is no property in the water. Every proprietor has an equal right to use the water which flows in the stream ; and consequently, one of them cannot use it, to the prejudice of any other. Without the consent of the other proprietors, who may be affected by his operations, no proprietor can either diminish the quantity of water, which would otherwise descend to the proprietors below, nor throw back water upon the proprietors above. Every proprietor, who claims either of those rights, must, in order to maintain his claim, either prove an actual grant or license from the proprietor affected by his operations, or must prove an uninterrupted enjoyment of twenty years; which term of twenty years is now adopted, upon a principle of general convenience, as affording conclusive presumption of a grant. No action, he thought, would lie, for diverting or throwing back water, except by a person who sustains an actual injury; but
 
 the action must lie at any time within twenty years, when the injury happens to arise in consequence of a new purpose of the party to avail himself of his common right.
 
 The common right here spoken of is not that existing in all men, in respect of things
 
 publici juris;
 
 but that common to the proprietors of the land on the stream. And as between them, the use to w'hich one is entitled is not that which he happens to get before another, but it is that which, by reason of his ownership of land on the stream, he can enjoy on his land, and as appurtenant to it. As that right is equal in each owner of the land, because naturally each can equally enjoy it, so one must exercise that right in himself, without disturbing any other, above or below, in his natural advantages; which natural advantages, as appurtenances to the soil, the other can insist on, at all times, until he shall have granted them away, or until here, as in England, a grant is presumed from enjoyment for twenty years.
 
 Wilson
 
 v.
 
 Wilson,
 
 4 Dev. Rep. 154.
 

 These principles and authorities sustain the opinion of his Honor, and are decisive against the defence set up.
 
 *60
 
 Both parties rest here upon their title as owners of the land, with the fact on the part of the defendants, that their dam was erected, before the new purpose of the plaintiffs to avail themselves of all the fall in the stream by-setting their wheel some inches lower. But it does not appear that the defendants’ own mill is not newly erected ; and there is therefore no ground for the presumption of a grant
 
 from
 
 the plaintiffs, or those under whom they claim.
 

 We see no difficulty in the questions made under our statutes. The motion in arrest of judgment is answered by the terms of the judgment, which corrects the finding of damages for a longer period than one year before the suit brought; if that had been an error.
 

 It is unnecessary to say, whether a petition would lie for damages altogether prospective, which is the case supposed in the instructions prayed; because here the jury have found some — small indeed — damages for the year preceding the action.
 

 We think it follows necessarily, from the justice of the case, and from the provisions in the close of the first section, that the verdict shall be binding for five years from thé filing of the petition, unless the damages should be increased by raising the water or otherwise, if the mills are kept up, that the legislature intended the jury to ascertain the actual damages, as far as it could be done. Prospectively, it was from necessity to depend partly on conjecture; and the jury are allowed to assess for the five years at an average; but they are not obliged to do so. Suppose the defendants to take or let the mill go down pending the suit; he cannot be obliged to pay for the whole time. So if the jury can see that more or less •damages have arisen to the plaintiff at different times, they are at liberty to increase or diminish those found, accordingly. As was said, in
 
 Gillet
 
 v.
 
 Jones, ante,
 
 vol. i. 339, the policy of the act makes it applicable to every case of an injury by the erection of a mill; but it^does not create or abolish rights, but only relates to the remedy. Consequently, a verdict which finds the actual damages at different periods, is consistent with the objects of the.
 
 *61
 
 statute, and constitutes the real justice between the parties, as to the whole time preceding the trial. •
 

 Per Curiam. Judgment affirmed.