ELLEN DICKINSON, JAMES LUPTON, CALLIE FERRIER, WILLIAM BAKER LUPTON, AND ALLEN W. LUPTON v. CHARLES L. PAKE AND WIFE, TOMMIE PAKE

No. 102

(Filed 1 February 1974)

1. **Adverse Possession § 23— burden of proving easement by prescription**

   The burden of proving the elements essential to the acquisition of a prescriptive easement is on the party claiming the easement.

2. **Adverse Possession § 22— presumption of permissive use**

   The law presumes that the use of a way over another's land is permissive or with the owner's consent unless the contrary appears.

3. **Adverse Possession § 1— easement by prescription**

   In order to acquire an easement by prescription, the use must be adverse, hostile or under a claim of right, the use must be open and notorious, the use must be continuous and uninterrupted for a period of twenty years, and there must be substantial identity of the easement claimed.

4. **Adverse Possession § 25; Easements § 4— roadway across defendants' land — easement by prescription — sufficiency of evidence**

   In an action to establish an easement by prescription to use an unpaved roadway leading from plaintiffs' land over the land of defendants to a public road, plaintiffs' evidence was sufficient to rebut the presumption of permissive use and to carry the case to the jury where it would permit the jury to find that (1) plaintiffs' family continuously and uninterruptedly used the roadway substantially as now located, for any and all purposes incident to the use and enjoyment of their property, from 1938 until 1968 as their only means of access from their property to the public road, (2) the use of said roadway commenced before defendants acquired the servient estate and was continued under such circumstances as to give defendants notice that the use was adverse, hostile and under claim of right, and (3) the use was open and notorious and with defendants' full knowledge and acquiescence.

5. **Rules of Civil Procedure § 50— motion for judgment n.o.v.**

   A motion for judgment notwithstanding the verdict is simply a motion that judgment be entered in accordance with the movant's ear-

Dickinson v. Pake

lier motion for a directed verdict and notwithstanding the contrary verdict actually returned by the jury. G.S. 1A-1, Rule 50(b).

**6. Rules of Civil Procedure § 50— evidence sufficient to withstand motion for directed verdict — judgment n.o.v.**

Where the evidence offered by plaintiffs was sufficient to withstand defendants' motion for a directed verdict, the trial court erred in granting defendants' motion for judgment *non obstante veredicto*.

**7. Adverse Possession § 6— tacking possession**

Tacking is the legal principle whereby successive adverse users in privity with prior adverse users can tack successive adverse possessions of land so as to aggregate the prescriptive period of twenty years.

**8. Adverse Possession § 6; Easements §§ 4, 9— use of roadway — ripening of easement by prescription — succeeding possessors of dominant tenement**

Where plaintiffs' mother used a roadway across defendants' land for ingress to and egress from her land without interruption, openly, notoriously and adversely, under a claim of right, from 1938 until her death in 1967, a period of approximately twenty-nine years, her adverse use of the roadway ripened into a prescriptive easement appurtenant to her land which inured to the benefit of every succeeding possessor of the land.

**9. Rules of Civil Procedure § 50— reversal of judgment n.o.v. — vacation of conditional grant of new trial**

Where the appellate court reversed the grant of a judgment n.o.v. for defendants and determined that the record contains no error of law prejudicial to defendants, the appellate court also vacated the trial court's order conditionally granting defendants a new trial. G.S. 1A-1, Rule 50(c).

Justice BRANCH dissenting.

ON *certiorari* to review decision of the Court of Appeals affirming judgment *non obstante veredicto* entered. by *Wheeler, J.*, 26 February 1973 Session, CARTERET District Court.

Plaintiffs instituted this action in December 1968 seeking a permanent injunction against defendants to restrain them from obstructing a roadway over lands of defendants in which plaintiffs claim a right-of-way by prescription.

Plaintiffs allege that they are all the children and heirs at law of Sophia Lupton who died intestate in 1967. By virtue of a deed dated 28 March 1938, Sophia Lupton became owner of the lands described therein, built a house on the land, and she and her children lived there until her death in 1967. Shortly after occupying her house, Sophia Lupton began using a road leading from her property and over lands now owned by defend-

ants to the public road. From 1938 until after Sophia Lupton's death in 1967, she and her successors in interest have used said road as the sole means of ingress and egress from the public road to the Sophia Lupton property. Said use has been under claim of right, adverse to the rights of all others and particularly to the claim of the defendants.

Plaintiffs further allege that on 16 March 1939 defendant Charles L. Pake purchased a tract of land from H. L. Graves, trustee, receiving a quitclaim deed for certain property therein described, lying between the property owned by plaintiffs as heirs at law of Sophia Lupton and the public road and including the area upon which is located the road leading from the Sophia Lupton property to the public road. Defendants and their agents have obstructed the road leading from the public road to the Sophia Lupton property, first blocking it with an automobile and later with a wire strung between two posts, thereby preventing the use of the roadway by plaintiffs and their invitees. Plaintiffs described the roadway as approximately twelve feet in width and located it on the ground by metes and bounds.

By answer duly filed, defendants admit that Sophia Lupton is deceased and that plaintiffs are her children. Defendants further admit that Charles Pake obstructed an area on his property, "which certain persons had been crossing," with an automobile. All other material allegations of the complaint are denied. Defendants demanded trial by jury.

Evidence offered by plaintiffs in support of their allegations will be discussed in the opinion. Defendants offered no evidence. The trial court submitted and the jury answered in favor of plaintiffs the following issue:

"1. Have the plaintiffs acquired an easement over the lands of the defendants by prescriptive, adverse, hostile and non-permissive use of the same road as described in the complaint for a period of twenty (20) years next preceding the institution of this action?

Answer: Yes."

Judgment was thereupon entered awarding plaintiffs an easement by prescription over the lands of defendants and permanently enjoining defendants from interfering with the use of said easement by plaintiffs.

The following day defendants filed motion for judgment notwithstanding the verdict, whereupon the trial court granted the motion, set aside the judgment theretofore entered and entered judgment for the defendants. In the alternative, the trial court granted defendants' motion for a new trial on the grounds that the verdict was contrary to law and contrary to the weight of the evidence.

Plaintiffs appealed to the Court of Appeals and that court, being of the opinion that plantiffs' use of the roadway in question was presumed by law to be permissive and that evidence offered by plaintiffs was insufficient to rebut the presumption, affirmed the judgment *non obstante veredicto,* entered by the trial court. We allowed certiorari to review that decision.

*Taylor and Marquardt by Nelson W. Taylor, Attorneys for plaintiff appellants.*

*Wheatly & Mason by L. Patten Mason, attorneys for defendant appellees.*

HUSKINS, Justice.

Development of the law in North Carolina with respect to acquisition of prescriptive easements has followed a tortuous route—roundabout and bent in different directions.

Coke states that at common law a long, continuous and peaceable user was necessary to establish a prescriptive right. Coke on Littleton § 113B. However, most American courts have sought to equate acquisition of prescriptive easements to acquisition of title by adverse possession so that it is generally held that prescriptive acquisition requires open, exclusive, continuous, uninterrupted, adverse user under a claim of right with the knowledge and acquiescence of the owner of the servient estate for the prescriptive period—usually twenty years. 25 Am. Jur. 2d, Easements, §§ 49-63 (1966) ; 3 R. Powell, Real Property, para. 413 (1973). The majority view today in other jurisdictions is that a *presumption of adverse user* arises when it is made to appear that the user has been enjoyed openly, continuously and uninterruptedly for the prescriptive period. 2 G. Thompson, Real Property, § 350 (repl. vol. 1961) ; Annot., 170 A.L.R. 776, 779 (1947).

Earlier North Carolina cases followed the majority view, holding that a prescriptive use was *presumed to be adverse,* sub-

Dickinson v. Pake

ject to rebuttal evidence by the owner of the servient estate showing that the elements on which the presumption was based did not exist. *Wilson v. Wilson,* 15 N.C. 154 (1833) ; *Pugh v. Wheeler,* 19 N.C. 50 (1836) ; *Gerenger v. Summers,* 24 N.C. 229 (1842) ; *State v. Hunter,* 27 N.C. 369 (1845).

Gradually and almost imperceptively, however, North Carolina moved away from the presumption that the user was adverse and began to emphasize the necessity of showing adverseness without mention of any initial presumption to that effect. See *Felton v. Simpson,* 33 N.C. 84 (1850) ; *Mebane v. Patrick,* 46 N.C. 23 (1853) ; *Ingraham v. Hough,* 46 N.C. 39 (1853) ; *Smith v. Bennett,* 46 N.C. 372 (1854) ; *Ray v. Lipscomb,* 48 N.C. 185 (1855). "There must, then, be some evidence accompanying the user, giving it a hostile character and repelling the inference that it is permissive and with the owner's consent, to create the easement by prescription and impose the burden upon the land." *Boyden v. Achenbach,* 86 N.C. 397 (1882). Thus, we moved from the majority view that the user is presumed to be adverse to the view that it is presumed to be permissive; and the permissive presumption rule has been followed in this jurisdiction ever since. See Comment, Prescriptive Acquisition in North Carolina, 45 N.C.L. Rev. 284 (1966).

In the case before us we must apply the following legal principles which are now established by decisions of this Court:

[1]　1. The burden of proving the elements essential to the acquisition of a prescriptive easement is on the party claiming the easement. *Williams v. Foreman,* 238 N.C. 301, 77 S.E. 2d 499 (1953), and cases therein cited.

[2]　2. The law presumes that the use of a way over another's land is permissive or with the owner's consent unless the contrary appears. *Henry v. Farlow,* 238 N.C. 542, 78 S.E. 2d 244 (1954) ; *Speight v. Anderson,* 226 N.C. 492, 39 S.E. 2d 371 (1946), and cases therein cited.

[3]　3. The use must be adverse, hostile, or under a claim of right. *Dulin v. Faires,* 266 N.C. 257, 145 S.E. 2d 873 (1966) ; *Weaver v. Pitts,* 191 N.C. 747, 133 S.E. 2 (1926) ; *Mebane v. Patrick,* 46 N.C. 23 (1853). "To establish that a use is 'hostile' rather than permissive, 'it is not necessary to show that there was a heated controversy, or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the

servient estate.' [Citations omitted.] A 'hostile' use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right." *Dulin v. Faires, supra*. There must be some evidence accompanying the user which tends to show that the use is hostile in character and tends to repel the inference that it is permissive and with the owner's consent. *Boyden v. Achenbach, supra*. A mere permissive use of a way over another's land, however long it may be continued, can never ripen into an easement by prescription. *Nicholas v. Furniture Co.*, 248 N.C. 462, 103 S.E. 2d 837 (1958); *Williams v. Foreman, supra*.

4. The use must be open and notorious. "The term adverse user or possession implies a user or possession that is not only under a claim of right, but that it is open and of such character that the true owner may have notice of the claim; and this may be proven by circumstances as well as by direct evidence." *Snowden v. Bell*, 159 N.C. 497, 75 S.E. 721 (1912).

5. The adverse use must be continuous and uninterrupted for a period of twenty years. *Speight v. Anderson*, 226 N.C. 492, 39 S.E. 2d 371 (1946). "The continuity required is that the use be exercised more or less frequently, according to the purpose and nature of the easement." J. Webster, Real Estate Law in North Carolina § 288 (1971). An interruption to an easement for a right-of-way "would be any act, done by the owner of the servient tenement, which would prevent the full and free enjoyment of the easement, by the owner of the dominant tenement . . . ." *Ingraham v. Hough*, 46 N.C. 39 (1853).

6. There must be substantial identity of the easement claimed. *Hemphill v. Bd. of Aldermen*, 212 N.C. 185, 193 S.E. 153 (1937). "To establish a private way by prescription, the user for twenty years must be confined to a definite and specific line. While there may be slight deviations in the line of travel there must be a substantial identity of the thing enjoyed." *Speight v. Anderson*, 226 N.C. 492, 39 S.E. 2d 371 (1946).

The evidence in this case, when considered in the light most favorable to plaintiffs, tends to show the facts narrated below:

Plaintiffs are the five children of Sophia Lupton, now deceased. By deed dated 28 March 1938 Sophia Lupton acquired title from her sister Julia Pake to a tract of land lying south of

the Lennoxville Road and next to Taylor's Creek in Carteret County. A house was built and Sophia and four of her five children moved into it sometime in 1938. (It was discovered around 1960 that the house had been built over the west property line and Julia Pake conveyed to Sophia Lupton an adjacent strip along the west boundary of the 1938 tract so as to give Sophia title to all the land on which the house was located, but this fact is without significance on the questions involved in this case.)

By deed dated 16 March 1939 defendants Charles L. Pake and wife acquired title to a tract of land north of the tract conveyed to Sophia Lupton in 1938, lying between the Lupton property and the Lennoxville Road. In 1940 defendants built a house on this land and have lived in it since that time.

When Sophia Lupton acquired her property in 1938 there was already in existence an unpaved road leading from the Lennoxville Road to Taylor's Creek, passing over the land acquired by defendants in 1939 and continuing over the Sophia Lupton property to the creek. This old roadway is designated as Lupton Drive on Plaintiffs' Exhibit 1.

Lupton Drive, a rutted, sandy road, had been used from 1915 until 1938 by local residents for access to Taylor's Creek. Sophia Lupton and her children used said road continuously as the sole route of ingress and egress to and from the Lupton property from 1938 until 1968 when defendants blocked it. It was being used in that fashion by Sophia Lupton and her children when defendants acquired their property in 1939. The road was used by family friends who came to visit, by deliverymen, and by all others having occasion to reach the Lupton property. Friends and relatives of the Luptons, and other persons, who docked their boats in Taylor's Creek also used the road. That portion of Lupton Drive between the Lennoxville Road and the Pake house was also used by the Pakes for ingress and egress after they moved onto their land in 1940.

From 1938 until the present time the location of Lupton Drive has remained essentially unchanged. At one time defendants placed shrubbery and old tires along one edge of the road so as to restrict travel to the well-defined roadway. At another time, a power pole was placed on the Lennoxville Road right-of-way so as to cause a slight narrowing of the mouth of Lupton Drive where it connects with the Lennoxville Road.

Plaintiffs and their mother, by raking leaves and scattering oyster shells in the roadway, have performed what slight maintenance was required to keep Lupton Drive in passable condition.

Mrs. Ellen Lupton Dickinson, one of the plaintiffs, moved out of her mother's home in 1941 but continued to use Lupton Drive four or five times a week to visit her mother. Callie Lupton Ferrier moved out of the house in 1959, and Allen Lupton moved out in 1960. The evidence does not disclose when James Lupton moved away. William Baker Lupton, the fifth child, was living in Florida in 1938 and has never lived in the Sophia Lupton house.

There is no evidence that plaintiffs ever sought permission or that defendants ever gave permission for use of the road. Plaintiffs and defendant Charles Pake are first cousins and had always been very close prior to obstruction of the road in 1968. Ellen Dickinson testified, among other things: "I and my brothers and sister did think this was our road. We had always used it and had a right to use it."

That portion of defendants' answer admitting that defendants had obstructed Lupton Drive to bar vehicular traffic was offered in evidence.

We must first decide, preliminary to the main question, whether the foregoing evidence is sufficient to withstand defendants' motion for a directed verdict and carry the case to the jury.

A motion for a directed verdict under Rule 50(a) presents substantially the same question as formerly presented by motion for judgment of nonsuit. *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297 (1971); *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396 (1971). In passing upon such motion at close of plaintiffs' evidence in a jury case, as here, the evidence must be taken as true, considered in the light most favorable to plaintiffs, and may be granted only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiffs. *Younts v. Insurance Co.,* 281 N.C. 582, 189 S.E. 2d 137 (1972); *Adler v. Insurance Co.,* 280 N.C. 146, 185 S.E. 2d 144 (1971); *Cutts v. Casey, supra; Kelly v. Harvester Co., supra;* 5A Moore's Federal Practice, para. 50.02[1] (2d ed. 1971).

[4] So viewed, plaintiffs' evidence tends to show, and would permit but not compel a jury to find, that: (1) the Lupton family

Dickinson v. Pake

continuously and uninterruptedly used Lupton Drive substantially as now located, for any and all purposes incident to the use and enjoyment of their property, from 1938 until 1968 as their only means of access from their property to the Lennoxville Road; (2) the use of said road commenced before defendants acquired the servient estate and was continued under such circumstances as to give defendants notice that the use was adverse, hostile, and under claim of right; (3) the use was open and notorious and with defendants' full knowledge and acquiescence. *Dulin v. Faires,* 266 N.C. 257, 145 S.E. 2d 873 (1966).

Hence, the evidence was sufficient to rebut the presumption that the use was permissive and carry the issue to the jury. The trial court properly overruled defendants' motion for a directed verdict.

The jury found that plaintiffs had acquired a prescriptive easement to use Lupton Drive and judgment was entered accordingly. We now consider the determinative question involved on this appeal: Did the trial court err in allowing defendants' motion for judgment notwithstanding the verdict?

In interpreting the Rules of Civil Procedure, commentators explain judgment notwithstanding the verdict as follows: "Rule 50(b) authorizes such a 'reserved directed verdict' motion practice. If the judge denies, or simply does not grant, a motion for directed verdict made at the conclusion of all the evidence and a verdict is then either not returned or returned against the movant, the judge may then entertain a motion by him for judgment 'in accordance with his motion for directed verdict.' The motion may be granted 'if it appears that the motion for directed verdict could properly have been granted.' This means that the same standard of sufficiency of evidence as that under the directed verdict motion is applied." 2 McIntosh, North Carolina Practice and Procedure, § 1488.35 (Phillips Supp. 1970).

"The propriety of granting a motion for judgment notwithstanding the verdict is determined by the same considerations as that of a motion for a directed verdict. . . . " Sizemore, General Scope and Philosophy of the New Rules, 5 Wake Forest Intramural L. Rev. 1, 41 (1969).

[5, 6] So, a motion for judgment notwithstanding the verdict is simply a motion that judgment be entered in accordance with

the movant's earlier motion for a directed verdict and notwithstanding the contrary verdict actually returned by the jury. Rule 50(b), Rules of Civil Procedure; *Summey v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973). Consequently, since the evidence offered by plaintiffs in this case was sufficient to withstand defendants' motion for a directed verdict, the court below erred in granting defendants' motion for judgment *non obstante veredicto.*

The argument is advanced, however, that judgment notwithstanding the verdict was properly granted because (1) plaintiffs failed to prove title to the Lupton property and (2) plaintiffs "cannot tack a prescriptive right for roadway purposes."

[7, 8]   Tacking is the legal principle whereby successive adverse users in privity with prior adverse users can tack successive adverse possessions of land so as to aggregate the prescriptive period of twenty years. J. Webster, Real Estate Law in North Carolina § 289 (1971). Here, taken in the light most favorable to plaintiffs, the evidence is sufficient to permit a finding by the jury that Sophia Lupton, mother of these plaintiffs, used Lupton Drive without interruption, openly, notoriously and adversely, under claim of right, from 1938 until her death in 1967, a period of approximately twenty-nine years. In this situation, her adverse use of the road for more than twenty years ripened into an easement by prescription, and the applicable legal principle is not tacking but succession. 3 R. Powell, Real Property, para. 418 (1973).

"Except as prevented by the terms of its transfer, or by the manner or the terms of the creation of the easement appurtenant thereto, one who succeeds to the possession of a dominant tenement thereby succeeds to the privileges of use of the servient tenement authorized by the easement." 5 Restatement of Property § 487 (1944). The explanatory notes to this section of the Restatement explain this principle of succession as follows: "An easement appurtenant is not a normal incident of possession but must at some time have been effectively created as incidental to the possession of the dominant tenement. . . . The possessor of the dominant tenement who claims the benefit of such an easement must prove the manner and the circumstances of its creation. . . . An easement appurtenant, once created, so long as it exists, attaches to the possession of the dominant land and follows it into whosesoever hands it may

come." 5 Restatement of Property, Explanatory Notes § 487, comment *a* at 3029-30 (1944); *see Boyden v. Achenbach,* 86 N.C. 397 (1882).

Adverse user of Lupton Drive by Sophia Lupton and her family for more than twenty years created an easement appurtenant to the Lupton land which inured to the benefit of the possessor of the land in his use of it. 5 Restatement of Property § 453 (1944). Hence possession, not title, is the relevant consideration. "Since an easement appurtenant is incidental to the possession of the dominant tenement, every succeeding possessor is entitled to the benefit of it while it continues to exist as such an easement and he remains in possession. It is immaterial how he comes into possession, whether by conveyance or by operation of law, whether rightfully or wrongfully. Even one who comes into possession of a dominant tenement wrongfully will be entitled, as against the possessor of the servient tenement, to the benefit of all easements appurtenant to the dominant tenement." 5 Restatement of Property, Explanatory Notes § 487, comment *e* at 3033 (1944).

[9]   When defendants moved for judgment notwithstanding the verdict they included, in the alternative, a motion for a new trial on the grounds (1) that the verdict was contrary to law, (2) contrary to the weight of the evidence, and (3) that plaintiffs had not carried the burden of proof. See Rule 50(c), Rules of Civil Procedure. The trial court allowed this motion conditionally "on the ground that the verdict is contrary to law and is contrary to the weight of the evidence, this ruling to take effect only in the event that the ruling of this Court on the defendants' motion for judgment is reversed on appeal." This procedure is authorized by Rule 50(c)(1) which provides in pertinent part: "In case the motion for new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate division has otherwise ordered." As pointed out by Dean Dickson Phillips in his supplement to 2 McIntosh, North Carolina Practice and Procedure, § 1488.45 (Phillips Supp. 1970): "The appellate court may reverse the grant of judgment n.o.v. If it does this and nothing more, the new trial proceeds upon remand. But the appellate court may also reverse on the grant of new trial, in which event the judgment of the verdict winner must be reinstated." The rule is so interpreted and applied in *Summey v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973).

Dickinson v. Pake

Having reviewed the record and being of the opinion that it contains no error of law prejudicial to defendants, we therefore vacate the order of the trial court granting a new trial on the issue raised by the pleadings and answered by the jury. No sound reason appears why the case should go back for another trial.

For the reasons stated the decision of the Court of Appeals, upholding the judgment *non obstante veredicto* entered by the trial court in favor of defendants, is reversed. The case is remanded to the Court of Appeals with instructions to remand it to the District Court of Carteret County for reinstatement of the verdict and judgment in favor of plaintiffs.

Reversed.

Justice BRANCH dissenting.

I am of the opinion that this case is controlled by the case of *Henry v. Farlow*, 238 N.C. 542, 78 S.E. 2d 244. There, plaintiff and her tenants used a roadway across defendant's land for a period of twenty-five years. Plaintiff did not request permission to use the roadway and defendant landowners voiced no objection to plaintiff's use of the roadway. This Court held that these facts did not show that the use of the roadway by plaintiff was accompanied by circumstances giving it an adverse character so as to rebut the presumption that the use was permissive.

I do not think that the facts of instant case disclose evidence of adverse or hostile use of the roadway by plaintiffs sufficient to rebut the presumption that the use of the roadway was permissive.

I vote to affirm the opinion of the Court of Appeals.