BNT COMPANY, A NORTH CAROLINA GENERAL PARTNERSHIP COMPOSED OF VASSILIOS A. SAFFO, NICHOLAS A. SAFFO AND ANTHONY A. SAFFO; MARK A. GILSON; ZION KAPACH AND WIFE, DORIT KAPACH AND HAROLD E. ROSEMAN AND WIFE, ELOISE T. ROSEMAN, PLAINTIFFS/APPELLEES v. BAKER PRECYTHE DEVELOP-MENT COMPANY, A NORTH CAROLINA CORPORATION, DEFENDANT/THIRD PARTY PLAINTIFF/APPELLANT v. A.V. (DOKEY) SAFFO, JACK STOCKS AND UNIVERSITY GROUP, INC., THIRD PARTY DEFENDANTS/APPELLEES

No. COA01-596

(Filed 18 June 2002)

**1. Nuisance— closing drainage ditch—flooding—lay opinion—sufficiency of evidence**

The trial court did not err by denying defendant's motions for a directed verdict and a judgment n.o.v. in a nuisance action which arose from the closing of a drainage ditch where there was sufficient evidence from which a layperson could form an opinion about whether the flooding was caused by closing the ditch.

**2. Nuisance— closing drainage ditch—contributory negligence instruction—not applicable**

The court did not err in a nuisance action arising from the closing of a drainage ditch by not giving defendant's requested instruction on plaintiffs' acquiescence in a third party defendant's alleged illegal extension of the ditch. The requested instruction was tantamount to a contributory negligence instruction, but neither the allegations nor the evidence supported a negligence theory of liability. The case was tried on violation of the reasonable use doctrine.

### 3. Nuisance— closing drainage ditch—damages

The trial court did not err in a nuisance action which arose from the closing of a drainage ditch by denying defendant's motion for a judgment n.o.v. for insufficient evidence of damages.

### 4. Nuisance— damages—gross rentals

The plaintiff was not limited to recovery of net rentals in a nuisance action which arose from the closing of a drainage ditch where plaintiff continued to accrue and pay expenses after it was unable to rent its houses as a result of defendant's act.

### 5. Corporations— defunct—liability of shareholders

The trial court did not err in a nuisance action arising from the closing of a drainage ditch by granting summary judgment for the third party defendants where the defendants were the principals in a defunct corporation. Except under circumstances not applicable here, shareholders are not personally liable for the acts of the corporation.

### 6. Statute of Limitations— trespass—flooding from blocked drainage ditch

Even if the shareholders of a defunct corporation could be held personally liable for the acts of the corporation in an action arising from the closing of a drainage ditch, that claim is barred by the statute of limitations. The acts of trespass occurred no later than the early 1980s and the statute of limitations is three years from the original trespass. Even if the flooding is an intermittent trespass, the party charged with liability must have had control over the conditions causing the trespass within three years preceding the injury.

Appeal by defendant/third party plaintiff from judgment entered 23 August 2000 and order entered 6 October 2000 by Judge Gary E. Trawick, and also from order entered 8 February 2002 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 14 February 2002.

*Hogue Hill Jones Nash & Lynch, L.L.P., by David A. Nash, for plaintiff-appellees.*

*Murchison, Taylor & Gibson, L.L.P., by Michael Murchison, for defendant/third party plaintiff-appellant.*

*Johnson & Lambeth, by Robert W. Johnson and Anna Johnson Averitt, for third party defendant-appellees.*

MARTIN, Judge.

Plaintiffs brought this action seeking monetary damages and injunctive relief upon allegations that defendant Baker Precythe. Development Corporation (Baker) had created a private nuisance by filling in a drainage ditch, resulting in damage to their property. Defendant Baker denied that any action on its part had damaged plaintiffs, counterclaimed against plaintiffs Roseman for trespass, and filed a third party complaint against third party defendants A.V. Saffo and Jack Stocks seeking indemnity for any liability defendant might have to plaintiffs. Defendant also filed a third party complaint against University Group, Inc., which it subsequently dismissed. Defendant Baker appeals (1) from an order granting summary judgment in favor of third party defendants Saffo and Stocks, (2) from a judgment, entered upon a jury verdict, awarding plaintiffs damages for defendant's obstruction of a drainage ditch and ordering that defendant abate the nuisance by piping water from the ditch across defendant's property, and (3) from the order entered denying defendant's motion for judgment notwithstanding the verdict. For the reasons which follow, we affirm summary judgment in favor of the third party defendants Saffo and Stocks, and find no error in the trial of plaintiffs' claim against defendant Baker.

Briefly summarized, the evidence at trial tended to show that defendant purchased a 17.472 acre tract (the Baker tract) of land in New Hanover County in June 1997 from B & D Development Corporation. The Baker tract was located immediately north of a 12 acre tract belonging to plaintiffs Harold and Eloise Roseman, upon which was located the Rosemans' residence and a small mobile home park. Adjacent to, and south of, the Rosemans' property was the Hidden Valley subdivision, which had been developed in the 1980s by Hidden Valley Corporation. Hidden Valley Corporation has been liquidated; its primary shareholders were A.V. (Dokey) Saffo and Jack Stocks. Plaintiff BNT Company (BNT) is a partnership composed of Vassilios A. Saffo, Nicholas A. Saffo, and Anthony A. Saffo. BNT owns two lots in Hidden Valley subdivision, located at 340 Hidden Valley Road and 400 Hidden Valley Road. At all times relevant to this action, plaintiff Mark Gilson was the lessee of the premises at 340 Hidden Valley Road and plaintiffs Zion and Dorit Kapach were the lessees of the premises located at 400 Hidden Valley Road.

A drainage ditch crossed the Roseman property from south to north, which provided drainage from the Hidden Valley subdivision across the Roseman property into a wetlands area north of the

Roseman property. In the early 1990s, B & D purchased the tract north of the Roseman property, which included the Baker tract, and developed the Crosswinds subdivision. In 1997, B & D conveyed the Baker tract to defendant. The drainage ditch in question crossed the Baker tract.

In 1998, defendant Baker began development of a subdivision known as Masonboro Village. On 26 June 1998, Baker closed the ditch on its property. The ditch closing alleviated flooding problems on the Baker tract, as well as flooding of the Crosswinds subdivision, which was adjacent to Baker's tract and north of plaintiffs' property. However, plaintiffs alleged that since the closing of the ditch, the properties south of the Masonboro Village Subdivision experienced repeated flooding resulting in substantial property damage.

Harold Roseman testified that he never experienced flooding on his tract of land prior to the closing of the ditch. After defendant closed the ditch, Roseman stated that his property flooded "every time it rains." Roseman testified that he incurred damages to a mobile home, dogwood trees, azaleas and other plants. He also lost fish from his fish pond. Bill Saffo, a one-third interest partner in plaintiff BNT Company, testified that the partnership rented houses on its lots to plaintiffs Marc Gilson and the Kapachs. Saffo testified that the lots did not flood following Hurricane Bertha in July 1996, nor did they flood following Hurricane Fran in September 1996. Following the closing of the ditch, however, the lots and homes began experiencing flooding "on numerous occasions." Saffo stated that he had not been able to rent the houses since September 1998 because they "continuously flood." Saffo stated that a general contractor estimated repairs totaling $35,000 to the home previously occupied by Gilson and $14,000 for the home rented by the Kapachs. In addition, at the time of trial BNT had lost two years' worth of rental income.

Defendant contended, however, that A.V. Saffo and Jack Stocks had illegally excavated the ditch across a ridge on the Baker tract in the 1970s or 1980s in an effort to drain the low lying areas of the Hidden Valley subdivision. Also, defendant's expert, Everette Knight, a civil engineer, testified that defendant's "closing of the ditch had an insignificant effect on [the Saffos'] property during the major storm events . . . ." He testified that the Rosemans' property flooded due to low elevation; according to Knight, the ditch was also clogged with debris which increased the risk of flooding. Knight further testified that, based on measurements of the elevations of the tracts, the water at one time flowed from north to south, rather than the current south

to north flow. According to Knight, this change in water flow would have to have been caused by the digging of a ditch so as to "penetrate the ridge." Knight concluded that one of BNT's rental houses was in a low-lying depression which was the cause of the damage to the home from flood waters; in a major storm event such as a hurricane, "the water level is going to get above the finished floor elevation of this house." Knight admitted that he was not aware of any flooding occurring on the Rosemans' property or the BNT lots during Hurricanes Fran and Bertha, storm events which occurred before defendant filled in the ditch in June 1998. Although Knight testified that from the photographs he observed "what looks to be a ditch that was built in the 1980s," he also testified that he saw a feature in a 1938 photograph of the area that could have been a drainage ditch with a similar configuration as the drainage ditch observed in the 1984 photograph. Shawn Maxwell, a photogrammatist and expert witness for plaintiffs, testified that from an analysis of three photographs from the relevant area, he observed a drainage ditch present in the same location as far back as 1938.

I.

[1] Defendant first contends the trial court erred by denying defendant's motions for directed verdict, made at the close of all the evidence, and for judgment notwithstanding the verdict on the issue of causation. A motion for directed verdict pursuant to G.S. § 1A-1, Rule 50(a) tests the sufficiency of the evidence to support a verdict for the non-moving party. *Stanfield v. Tilghman*, 342 N.C. 389, 464 S.E.2d 294 (1995). A motion for judgment notwithstanding the verdict pursuant to G.S. § 1A-1, Rule 50(b) is, in essence, a renewal of an earlier motion for directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E.2d 897 (1974). The same test is applied when ruling on either motion. *Bryant v. Nationwide Mutual Fire Ins. Co.*, 313 N.C. 362, 329 S.E.2d 333 (1985). On a defendant's motion for a directed verdict or judgment notwithstanding the verdict, the plaintiff's evidence must be taken as true and in a light most favorable to him, and the motion should be denied only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. *Dickinson*, 284 N.C. 576, 201 S.E.2d 897.

> In considering any motion for directed verdict, the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the

benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Bryant* at 369, 329 S.E.2d at 337-38 (citation omitted).

Defendant specifically argues that plaintiffs failed to present necessary expert testimony establishing that the actions of defendant caused the flooding on plaintiffs' property. Defendant cites *Davis v. City of Mebane*, 132 N.C. App. 500, 512 S.E.2d 450 (1999) for the rule that expert testimony is required to establish proximate causation of flooding. In *Davis*, a hydroelectric dam allegedly caused atypical downstream flooding. Due to the complexity of the situation, the Court of Appeals held that "expert testimony is necessary to prove causation *in this case*." *Id.* at 504, 512 S.E.2d at 453 (emphasis added).

> There are many instances in in [sic] which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of . . . Where, however, the subject matter . . . is "so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of . . . [the] condition."

*Id.* (quoting *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1965) (citations omitted)).

Unlike the unusual circumstances in *Davis*, the facts of the instant case are such that a layperson could form an intelligent opinion about whether the flooding was caused by the closing of the ditch. Plaintiffs presented specific testimony on causation similar to that accepted by the North Carolina Supreme Court in the case of *Cogdill v. Highway Comm. and Westfeldt v. Highway Comm.*, 279 N.C. 313, 182 S.E.2d 373 (1971). Harold Roseman, who has owned his portion of the affected property since 1962, testified that he had never experienced flooding on his property prior to June 1998, when defendant closed the ditch. Once the ditch was closed, according to Roseman, his land flooded every time it rained. He also stated that when the ditch was not closed, the water flowed from south to north onto Baker's property. Bill Saffo, a partner in BNT Company, testified that the BNT properties did not flood during Hurricanes Bertha and Fran in 1996, but following the closing of the ditch in June 1998, those

properties flooded on several occasions. Since September 1998, plaintiff BNT has been unable to rent the houses on its lots due to repeated flooding.

In addition, Dan Dawson, an independent engineer whose firm was employed by the county and who conducted a comprehensive drainage study in the Crosswinds/Hidden Valley area, testified that the closing of the ditch "interrupted the drainage flow in that area," which could result in flooding "[i]f the water could not escape in some alternate manner." Finally, John Baker, a 50 percent share-holder in defendant company, testified that he realized, when he filled in the ditch, that he "would be stopping water that would probably flood [the Rosemans'] ditches." We hold that plaintiffs presented suf-ficient evidence to support the jury's verdict as to causation, and the trial court did not err in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict. Defendant's assignments of error to the contrary are overruled.

## II.

[2] Defendant next contends the trial court erred by failing to include defendant's written request for a specific instruction related to nui-sance. Defendant requested that the jury be instructed to consider, as one of the factors relevant to the nuisance charge, "plaintiffs' fault or lack of care in creating the harm sustained." This request stems from defendant's contention that plaintiffs acquiesced in the third party defendants' allegedly illegal extension of the ditch onto defendant's property. Pursuant to N.C.R. Civ. P. 51(b), "when a party aptly tenders a written request for a specific instruction *which is correct in itself* and supported by the evidence, it is error for the court to fail to give the instruction at least in substance." *Williams v. Randolph*, 94 N.C. App. 413, 425, 380 S.E.2d 553, 561, *disc. review denied*, 325 N.C. 437, 384 S.E.2d 547 (1989) (emphasis added) (citing *Bass v. Hocutt*, 221 N.C. 218, 19 S.E.2d 871 (1942)). The instruction requested by defend-ant regarding "plaintiffs' fault or lack of care" is tantamount to a contributory negligence instruction. The defense of contributory neg-ligence may, in certain circumstances, be available in a private nui-sance action arising from defendant's alleged negligence in creating the nuisance. *Boldridge v. Crowder Const. Co.*, 250 N.C. 199, 203, 108 S.E.2d 215, 218 (1959) ("whenever a nuisance has its origin in negli-gence, one may not avert the consequences of his own contributory negligence by affixing to the negligence of the wrongdoer the label of a nuisance.") (citation omitted).

BNT CO. v. BAKER PRECYTHE DEV. CO.

[151 N.C. App. 52 (2002)]

Neither the allegations of the complaint nor the evidence at trial supported a negligence theory of liability in this case. The complaint alleged defendant's actions were "intentional, unreasonable, reckless and in total disregard to the health and safety of the plaintiffs." The evidence showed that defendant intentionally closed the ditch; defendant contended through the testimony of its expert witness that the flooding was due to causes other than the ditch closure. Thus, the theory of liability upon which the case was tried was whether defendant violated the "reasonable use" doctrine, articulated in *Pendergrast v. Aiken*, 293 N.C. 201, 236 S.E.2d 787 (1977), and the trial court correctly refused to give the requested instruction. *See Youmans v. City of Hendersonville*, 175 N.C. 574, 96 S.E. 45 (1918) (refusing to apply contributory negligence rule where alleged injuries were in the nature of nuisance or trespass).

### III.

**[3]** Defendant also assigns error to the denial of its motion for judgment notwithstanding the verdict and to the entry of judgment on the verdict on the grounds the evidence was insufficient to support the jury's damage award. We disagree.

Plaintiffs presented substantial evidence of the losses incurred as a result of defendant's closing of the ditch. Harold Roseman testified that he incurred damages to a mobile home, damage to personal property, damage to his truck as a result of having to drive over rough terrain because his driveway was flooded, as well as damage to landscaping on his property. The Rosemans also lost rental income from their rental mobile homes. Dorit Kapach testified as to damages to various items of personal property, the value of frozen food lost when the Kapachs were unable to turn their electricity on because their rental house was flooded, and lost wages due to their inability to go to work due to the flooding. Bill Saffo testified that BNT Company incurred extensive damage to its rental homes, as well as the loss of rental income for two years. Defendant has not brought forward any assignment of error with respect to the admission of such evidence. Plaintiffs are entitled to recover all pecuniary losses shown with reasonable certainty by the evidence to have resulted from defendant's wrongful act. *Huff v. Thornton*, 287 N.C. 1, 213 S.E.2d 198 (1975). "The determination of such damages is left to the sound judgment and discretion of the trier of fact." *Hanna v. Brady*, 73 N.C. App. 521, 527, 327 S.E.2d 22, 25, *disc. review denied*, 313 N.C. 600, 332 S.E.2d 179 (1985) (citations omitted).

**[4]** Defendant also contends BNT was impermissibly awarded damages for lost rentals because its evidence included only evidence of gross rentals lost during the period, and did not take into account costs associated with renting the properties. Defendant contends that BNT is entitled to recover only its net rental loss. We reject this argument as well.

Bill Saffo testified, without objection, as to monthly rentals of each of the properties damaged by the flooding. He was cross-examined extensively by defendant's counsel concerning those amounts. Mr. Saffo testified that BNT was required to continue paying the mortgages, taxes, insurance, utilities, and other expenses associated with the properties during the time when they could not be rented due to the damage caused by defendant's blockage of the ditch. He testified that the only expense BNT was not required to pay was the rental management fee. The trial court instructed the jury that damages could include "any loss of income, including rental income, . . . as a result of the defendant's blocking of the ditch." Although defendant assigned error to the trial court's jury instructions regarding damages, the assignment of error was not brought forward in defendant's brief and is, therefore, abandoned and not before us. N.C.R. App. P. 28(b)(5).

Our Supreme Court has held that damages in a tort action include compensation "for all pecuniary losses sustained . . . which are the natural and probable result of the wrongful act and which . . . are shown with reasonable certainty by the evidence." *Champs Convenience Stores v. United Chem. Co.*, 329 N.C. 446, 462, 406 S.E.2d 856, 865 (1991) (quoting *Huff v. Thornton*, 287 N.C. 1, 8, 213 S.E.2d 198, 204 (1975)). Pointing out that the scope of recovery in a tort action, i.e., whether the damages were the natural and probable consequence of the wrong, is more liberal than in a contract action, where the recovery is based upon whether the damages were within the legal contemplation of the parties, the Court held that a plaintiff was entitled to recover not only lost profits but also reasonable overhead expenses incurred during the period when the plaintiff was unable to operate the business. *Id.* The same principle is applicable here. As a result of defendant's act, BNT was unable to rent the houses, losing rentals, but continued to accrue and pay expenses such as mortgage payments, taxes, utilities, and insurance. Thus, BNT was not limited to recovery of the net rentals. Defendant's assignments of error regarding the sufficiency of the evidence to support the damage awards are overruled.

## IV.

[5] Finally, defendant Baker, as third party plaintiff, contends the trial court erred by granting the motion of the third party defendants Saffo and Stocks for summary judgment, and dismissing its claim against them for indemnity. We disagree.

The burden is on the party moving for summary judgment to show the absence of any genuine issue of material fact and that party's entitlement to judgment as a matter of law. *Lyles v. City of Charlotte*, 120 N.C. App. 96, 461 S.E.2d 347 (1995). That burden may be met by showing that an essential element of the opposing party's claim is either nonexistent or that evidence is not available to support it; the burden may also be met by showing that the opposing party cannot overcome an affirmative defense raised in bar of its claim. *Id.*

In its third party complaint, defendant Baker alleged that A.V. Saffo and Jack Stocks were the principals in Hidden Valley Corporation, "a defunct corporation," which was the developer of Hidden Valley subdivision. As to those third party defendants, Baker alleged

4. In the late 1970' [sic] or early 1980's, third party defendants Saffo and Stocks improperly ordered the enlargement of and excavation of a ditch extending from the northerly boundary of the Hidden Valley subdivision across property of plaintiff Roseman into property currently being developed by third party plaintiff Baker Precythe Development Company as the Masonboro Village subdivision, without first procuring the consent of the then owner of the property.

5. To the extent defendant/third party plaintiff Baker Precythe Development Company is liable to plaintiffs in conjunction with the closure of the aforesaid ditch, which liability is expressly denied, third party defendants Saffo and Stocks are liable to defendant/third party plaintiff Baker Precythe Development Company for all or part of plaintiffs' claim against it by reason of the aforesaid actions.

Defendant, as third party plaintiff, sought as relief:

judgment against the third party defendants A.V. (Dokey) Saffo, Jack Stocks . . . for all sums that may be adjudged against defendant Baker Precythe Development Company in favor of plaintiffs.

BNT CO. v. BAKER PRECYTHE DEV. CO.

[151 N.C. App. 52 (2002)]

Third party defendant Saffo testified that he, third party defendant Stocks, and A. L. McCarley were equal shareholders in Hidden Valley Corporation, which developed Hidden Valley subdivision. He testified that in the early 1980s the corporation, which is no longer in existence, contracted with Phil Jernigan, a contractor, to clean out the ditch, but that Mr. Jernigan did not widen or deepen the ditch. Defendant/third party plaintiff made no showing to the contrary. Except under circumstances not shown by the evidence to be applicable here, *see*, for example, G.S. § 55-14-08, shareholders are not personally liable for the acts of the corporation. N.C. Gen. Stat. § 55-6-22(b). Thus, third party defendants Saffo and Stocks can have no personal liability and are entitled to judgment as a matter of law.

[6] In addition, even if Saffo and Stocks could be personally liable for the acts of the corporation as alleged in the third party complaint, the claim is barred by the statute of limitations. To the extent the allegations of the third party complaint can be construed to allege a trespass by reason of the enlargement of the ditch, the act occurred, according to the allegation of the third party complaint and the testimony of A.V. Saffo, no later than the early 1980s. The statute of limitations for trespass is three years from the date of the original trespass. N.C. Gen. Stat. § 1-52(3). Though defendant Baker argues that the flooding resulting from the excavation and diversion of the water is an intermittent trespass, its assertions are of no avail. Even if we were to agree, the party charged with liability for trespass must have had control over the conditions causing the trespass within three years preceding the injury. *Hooper v. Lumber Co.*, 215 N.C. 308, 311, 1 S.E.2d 818, 820 (1939) ("in order to repel the bar of the statute of limitations it must affirmatively appear from the evidence that these conditions were under control of the defendant, and the breach of duty with reference thereto had taken place sometime within the period of three years preceding the injury."). Summary judgment in favor of third party defendants Saffo and Stocks is affirmed.

Trial of plaintiffs' claim against defendant—No Error.

Summary judgment dismissing the third party action—Affirmed.

Judges HUDSON and CAMPBELL concur.