DORIS BANKS, Plaintiff v. N.A. DUNN, III, Defendant

No. COA05-738

(Filed 18 April 2006)

**Waters and Adjoining Lands— alteration of drainage by fill— expert testimony not required—expert qualified**

Expert testimony was not required, and the trial court did not err by denying defendant's motion to exclude testimony by an expert, in a case in which plaintiff alleged that a portion of her property flooded during rainstorms after defendant placed

BANKS v. DUNN

[177 N.C. App. 252 (2006)]

68 truckloads of fill dirt on the rear of his property. The case involved no scientific principle more complex than that water flows downhill and carries with it loose material. Even assuming that expert testimony was required, this witness was qualified and his opinion was based on a wide range of scientific data and information.

Appeal by defendant from judgment entered 1 October 2004 by Judge Robert Hobgood in Wake County Superior Court. Heard in the Court of Appeals 25 January 2006.

*Stam, Fordham & Danchi, P.A., by Paul Stam and Theodore Danchi, for plaintiff-appellee.*

*Teague Campbell Dennis & Gorham, LLP, by John L. Tidball, for defendant-appellant.*

LEVINSON, Judge.

Defendant appeals from a judgment awarding plaintiff damages for defendant's trespass and violation of N.C. Gen. Stat. § 113A Art. 4, the Sedimentation Pollution Control Act (the SPCA). We affirm.

Plaintiff filed a district court complaint against defendant on 3 March 2003, seeking damages for defendant's alleged common law trespass and nuisance, and his violation of the SPCA. Defendant answered in May 2003, denying the material allegations of plaintiff's complaint. In July 2003 the case was transferred by consent order to Superior Court, on the basis of the amount of damages claimed. The case was tried before a jury in September 2004; uncontradicted trial evidence established, in pertinent part, the following: Defendant and plaintiff are long-time residents of Apex, North Carolina. Defendant owns and operates a gas station on Apex's main street, and the rear of his property adjoins plaintiff's back yard. Behind defendant's gas station is a steep hill that slopes sharply down to the boundary between his property and plaintiff's, while on plaintiff's side of the boundary line, the land slopes gently up towards her home. The property line between plaintiff and defendant is marked by a small watercourse, described variously at trial as a "drainage ditch" and an "intermittent" stream.

Plaintiff, who was 83 years old at the time of trial, testified that she had lived in the same house since 1957. About 15 years earlier she and her husband planted a row of Leyland cypress trees in their

BANKS v. DUNN

[177 N.C. App. 252 (2006)]

back yard, near the property boundary with defendant. The trees thrived, ultimately growing to about twenty-five feet high and eight feet across. When plaintiff's husband became ill in 2000, several people helped by mowing plaintiff's yard. Delman Williamson, plaintiff's brother-in-law, testified that when he mowed in 2000, the trees were healthy, the land was dry around the cypress trees, and he was able to take a riding lawn mower between the row of trees and the boundary creek. William Nolan Cooke testified that he had mowed plaintiff's lawn in 2000, and that the trees were healthy and the areas around them dry.

In April 2001 defendant dumped sixty-eight truckloads of fill dirt on the hill behind his gas station. The present lawsuit arises from damages allegedly caused by defendant's actions.

Cooke testified that, after defendant dumped the fill dirt on the hillside above the creek, he observed dirt running into the stream when it rained. Additionally, the plaintiff, Cooke, and Williamson all testified that, during the spring and summer of 2001, water ran onto plaintiff's back yard, and by summer of 2001 plaintiff's cypress trees were in standing water. Thereafter, the trees began to sicken and die. Phillip Crump, who was qualified as an expert witness arborist and nurseryman, testified that in the summer of 2001 plaintiff asked him to examine her dying cypress trees. He observed the standing water around the base of the trees, studied the trees' leaves and growth patterns, and analyzed the soil around the trees' roots. Crump found no evidence of disease or insect damage. His expert opinion was that the damage to plaintiff's trees was caused by their being in standing water, with their roots in wet, saturated soil. He also testified that it would cost about $20,000 to replace the trees.

Robert Ross testified that he was employed by the city of Apex to enforce the SPCA. During the spring and summer of 2001, he received complaints from defendant's neighbors that every time it rained, sediment washed down the hillside where defendant had dumped the fill dirt. Ross personally observed red clay washing down the slope and into the little stream at the bottom of the hill. He notified defendant that it was a violation of the SPCA to add soil on the creek bank without taking certain protective measures to keep the hillside from eroding. Charles Brown, a field agent with the North Carolina Department of Water Quality (DWQ), evaluated the site and determined that the watercourse was an intermittent stream that was subject to regulation by the SPCA and DWQ. Defendant disputed this conclusion, and

BANKS v. DUNN

[177 N.C. App. 252 (2006)]

asked for a second opinion; Ross then asked Steve Mitchell, from the North Carolina Department of Water Quality, to become involved.

Steven Mitchell testified that he had worked for twenty-six years as an environmental specialist with the State of North Carolina. His academic background in biology and chemistry had been supplemented by numerous continuing education courses dealing with stream ecology. Mitchell was involved in the development of the administrative rules for enforcing the SPCA, including the rules that defendant was alleged to have violated. His experience also included years of evaluating sites for compliance with environmental regulations. Mitchell was qualified by the trial court as an expert in environmental science and pollution control regulations.

Mitchell testified that he had been asked to provide a second opinion on the nature of the stream behind defendant's gas station. After evaluating the site, Mitchell agreed with Brown that it was a "stream feature" that was subject to "protection under the riparian buffer rule." Mitchell also determined that defendant was in violation of the relevant environmental regulations. He testified that, in his expert opinion, defendant's fill activities had altered the course of the stream, caused backup and ponding of water in plaintiff's yard, and led to the deterioration of plaintiff's row of cypress trees.

Following the presentation of evidence, the case was submitted to the jury, which returned a verdict finding defendant liable for $14,000 damages to plaintiff for trespass and violation of the SPCA. On this verdict, the trial court entered judgment 1 October 2004, awarding plaintiff $14,000 plus interest and attorneys' fees. From this judgment, defendant timely appealed.

Defendant argues first that the trial court erred by denying defendant's motion to exclude opinion testimony by expert witness Steven Mitchell as to "causation on the alleged change of the subject water flow." Defendant does not challenge Mitchell's general qualifications as an expert in environmental science and pollution control regulations, and he did not object to any other aspects of Mitchell's trial testimony. However, as regards Mitchell's expert opinion that water ran onto plaintiff's yard as a result of defendant's dumping fill dirt on the hillside next to her property, defendant contends that Mitchell's "opinion was based solely on an assumption" that any violation of the SPCA automatically causes a change in the course of the subject body of water. We disagree with defendant's characterization

of Mitchell's testimony. Moreover, we conclude that expert testimony was not required on the facts of this case.

One of the elements of plaintiff's common law claims was that defendant caused the entry of water onto her property. Defendant asserts under *Davis v. City of Mebane*, 132 N.C. App. 500, 512 S.E.2d 450 (1999), that plaintiff had to present expert testimony establishing that defendant's actions caused a change in the course of the stream in order to prove this element. We disagree.

"In *Davis*, a hydroelectric dam allegedly caused atypical downstream flooding. Due to the complexity of the situation, the Court of Appeals held that 'expert testimony is necessary to prove causation in this case.' " *BNT Co. v. Baker Precythe Dev. Co.*, 151 N.C. App. 52, 57, 564 S.E.2d 891, 895 (2002) (quoting *Davis*, 132 N.C. App. at 503-04, 512 S.E.2d at 453). In many situations, "the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of." *Davis*, 132 N.C. App. at 504, 512 S.E.2d at 453. However:

> [If] the subject matter . . . is 'so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of . . . [the] condition.'

*Id.* (quoting *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1965) (citations omitted)).

Unlike *Davis*, the instant case does not involve a reservoir, a dam, or other large scale municipal water project; nor does it involve the interplay of water currents upstream and downstream of plaintiff's property; the calculation of water flow rates; consideration of rainfall rates; determination of the boundary of the 100 year flood plain; or any other complex calculation.

In the instant case, it is undisputed that the properties owned by plaintiff and defendant had a common boundary marked by a small stream, or drainage ditch, and that plaintiff had a row of Leyland cypress trees planted near the little stream. Uncontradicted evidence established: (1) defendant dumped 68 truckloads of fill dirt on the steep hillside adjoining plaintiff's property; (2) thereafter, witnesses observed red clay mud washing down the hill and into the stream at the bottom; (3) when the fill dirt clogged the creek, the water ran out over the low side of the creek, onto plaintiff's back yard; and (4)

water pooled around plaintiff's row of Cypress trees. Thus, determination of the causal relationship between the fill dirt dumped on the hillside above the creek, and the subsequent flooding in plaintiff's yard, implicates no scientific principle more complex than the truism that water flows downhill, and will carry loose material in its flow.

We conclude that the factual scenario of the instant case is similar to that of *BNT*. In *BNT*, the issue was whether flooding on plaintiff's property was caused by defendant's interference with a drainage ditch. This Court held that "[u]nlike the unusual circumstances in *Davis*, the facts of the instant case are such that a layperson could form an intelligent opinion about whether the flooding was caused by the closing of the ditch. Plaintiffs presented specific testimony on causation similar to that accepted by the North Carolina Supreme Court in the case of *Cogdill v. Highway Comm. and Westfeldt v. Highway Comm.*, 279 N.C. 313, 182 S.E.2d 373 (1971)." *BNT*, 151 N.C. App. at 57, 564 S.E.2d at 895. Evidence cited in *BNT* included the following:

> Harold Roseman, . . . testified that he had never experienced flooding on his property prior to June 1998, when defendant closed the ditch. Once the ditch was closed, . . . his land flooded every time it rained. . . . Bill Saffo, . . . testified that the BNT properties did not flood during Hurricanes Bertha and Fran in 1996, but following the closing of the ditch in June 1998, those properties flooded on several occasions. . . . Dan Dawson, an independent engineer . . . testified that the closing of the ditch interrupted the drainage flow in that area, which could result in flooding if the water could not escape in some alternate manner. . . . [P]laintiffs presented sufficient evidence to support the jury's verdict as to causation[.]

*BNT*, 157 N.C. App. at 57-58, 564 S.E.2d at 895-96. (internal quotation marks omitted). We conclude, based on *Davis*, *BNT*, and related cases, that plaintiff was not required to present expert testimony in order to establish that defendant's actions in dumping dirt on the hillside altered the creek at the bottom of the hill and caused water to run into plaintiff's back yard.

Moreover, even assuming *arguendo*, that expert testimony on this point were required, we easily conclude that Mitchell was qualified to offer an expert opinion on the change in course of the stream. He testified that, in his expert opinion, defendant's dumping of fill dirt on the hillside directly above the stream had altered its course. His opin-

ion, which was corroborated by his sworn affidavit, was based on a wide range of scientific data and information, including: (1) assessment of alluvial deposits, sinuosity of the stream, presence or absence of terrestrial plants and fibrous roots, and changes in the stream substrate; (2) examination of aerial photographs; (3) information obtained from Ross and other witnesses who had observed the fill dirt washing into the creek; and (4) his analysis of the evidence in the context of his decades of experience in the field. This assignment of error is overruled.

Defendant's remaining arguments are also based on his contention, discussed above, that Mitchell's expert testimony on the cause of the change in the stream should have been excluded. These remaining arguments are without merit. Accordingly, the judgment of the trial court is

Affirmed.

Judges McCULLOUGH and ELMORE concur.