KEITH SMITH AND MARY SMITH, Plaintiffs v. BLYTHE DEVELOPMENT COMPANY, Defendant

No. COA07-1576

(Filed 19 August 2008)

**Construction Claims; Negligence— causation—flooding—summary judgment—expert witness testimony not required—sufficiency of lay witness testimony**

The trial court erred by granting defendant construction company's motion for summary judgment on the erroneous basis that an expert witness was required to prove negligence arising from the flooding of plaintiffs' basement soon after defendant's completion of construction work for the North Carolina Department of Transportation on the portion of a road directly in front of plaintiffs' residence, because the facts were such that a layperson could form an intelligent opinion about the causation of the flood based on evidence that: (1) plaintiffs submitted sworn affidavits and averred that they had lived in their current residence for twenty-two years and had never experienced any flooding prior to the pertinent incident; (2) plaintiffs asserted their yard, including the grading, was neither changed prior to nor has it been

SMITH v. BLYTHE DEV. CO.

[192 N.C. App. 219 (2008)]

changed since the flooding; (3) plaintiffs' allegations of flooding were substantiated by defendant's own employees who acknowledged that there was runoff onto plaintiffs' front lawn; and (4) a grade foreman stated that at the time he arrived at plaintiffs' residence, the draining pipe was completely clogged up and full of debris, and plaintiffs have not experienced any type of flooding issue since defendant subsequently ordered that the pertinent drainage ditch be cleared. Although defendant submitted the sworn affidavit of a registered engineer as an expert witness who gave a conflicting opinion, the question of causation created a genuine issue of material fact that should have been submitted to the jury.

Judge JACKSON dissenting.

Appeal by plaintiffs from order entered 1 October 2007 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 June 2008.

*Grier, Furr & Crisp, P.A., by Alan M. Presel, for plaintiff-appellants.*

*York, Williams, Barringer, Lewis & Briggs, L.L.P., by Gregory C. York and Angela M. Easley, for defendant-appellee.*

TYSON, Judge.

Keith and Mary Smith (collectively, "plaintiffs") appeal from order entered granting Blythe Development Company's ("defendant") motion for summary judgment. We reverse and remand for further proceedings.

## I. Background

In December 2003, defendant entered into a contract with the North Carolina Department of Transportation ("NCDOT") to widen, resurface, and expand the shoulder of John Russell Road in Charlotte, North Carolina. On or about 24 September 2004, defendant performed construction work on the portion of John Russell Road located directly in front of plaintiffs' residence. Soon after completion of the construction work, a heavy rain flooded plaintiffs' basement.

On 7 February 2007, plaintiffs filed a complaint against defendant alleging one count of negligence. Plaintiffs asserted "[b]y closing up,

blocking, removing and/or taking similar action with respect to the drainage ditch in front of [plaintiffs'] [p]roperty, [d]efendant failed to adhere to the accepted standard of care in performing its services." Plaintiffs further asserted "[a]s a direct and proximate result of [d]efendant's failure to adhere to the accepted standard of care in performing its services, [p]laintiffs have suffered damages[.]" Plaintiffs prayed for actual damages and reasonable attorney's fees. On 10 April 2007, defendant filed an answer denying the material allegations therein and sought the costs of the action be taxed against plaintiffs.

On 27 August 2007, plaintiffs filed a motion for summary judgment. On 30 August 2007, defendant also filed a motion for summary judgment and sought dismissal of plaintiffs' action with prejudice. On 1 October 2007, the trial court entered its order, which: (1) denied plaintiffs' motion for summary judgment; (2) granted defendant's motion for summary judgment; and (3) dismissed plaintiffs' claim with prejudice. Plaintiffs appeal.

## II. Issue

Plaintiffs argue the trial court erred by granting defendant's motion for summary judgment.

## III. Summary Judgment

### A. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a

forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.

We review an order allowing summary judgment *de novo*. If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal.

*Wilkins v. Safran*, 185 N.C. App. 668, 672, 649 S.E.2d 658, 661 (2007) (internal citations and quotations omitted).

### B. Analysis

Plaintiffs argue the trial court erred by granting summary judgment in favor of defendant "on the basis that an expert witness is required to prove negligence." We agree.

Our Supreme Court has "emphasized that summary judgment is a drastic measure, and it should be used with caution [,]" especially in negligence cases in which a jury ordinarily applies a reasonable person standard. *Williams v. Power & Light Co.*, 296 N.C. 400, 402, 250 S.E.2d 255, 257 (1979) (citation omitted). Summary judgment has been held to be proper in negligence cases "where the evidence fails to show negligence on the part of defendant, or where contributory negligence on the part of plaintiff is established, or where it is established that the purported negligence of defendant was not the proximate cause of plaintiff's injury." *Hale v. Power Co.*, 40 N.C. App. 202, 203, 252 S.E.2d 265, 267 (1979) (citation omitted).

This Court has addressed the issue of whether expert testimony is required to establish the element of causation in flooding cases with differing results based upon the complexity of the facts presented. *See BNT Co. v. Baker Precythe Dev. Co.*, 151 N.C. App. 52, 564 S.E.2d 891, *disc. rev. denied*, 356 N.C. 159, 569 S.E.2d 283 (2002); *Davis v. City of Mebane*, 132 N.C. App. 500, 512 S.E.2d 450 (1999), *disc. rev. improvidently allowed*, 351 N.C. 329, 524 S.E.2d 569 (2000). In *Davis v. City of Mebane*, the plaintiffs' properties were repeatedly flooded after a hydroelectric dam was constructed upstream from their respective properties. 132 N.C. App. at 501, 512 S.E.2d at 451. The plaintiffs contended the flooding was due to the negligent design and location of the dam, but were forced to rely solely upon lay testimony to support their assertion. *Id.* at 501-02, 512 S.E.2d at 451-52. The defendants argued that "lay testimony that there was no flooding before the dam was built and significant flooding after the dam was built [was] not sufficient to survive a motion for summary judgment."

*Id.* at 504, 512 S.E.2d at 453. This Court agreed with the defendants' assertion and stated "lay testimony would not be sufficient to explain changes in the watershed or in the downstream water flow." *Id.* This Court ultimately held that expert testimony was required to establish causation "[w]here . . . the subject matter . . . is 'so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion . . . as to the cause of . . . [the] condition.' " *Id.* (quoting *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1964)).

Several years later in *BNT Co. v. Baker Precythe Dev. Co.*, this Court revisited the issue of causation in negligence actions arising from repeated flooding. 151 N.C. App. at 52, 564 S.E.2d at 891. This Court acknowledged that the factual scenario presented in *BNT* was clearly distinguishable from the facts presented in *Davis. Id.* at 57, 564 S.E.2d at 895. In *BNT*, the plaintiffs owned 12 acres immediately south of the defendant's 17.472 acre tract. *Id.* at 54, 564 S.E.2d at 894. The defendant intentionally closed a drainage ditch located on its property, which caused repeated flooding and substantial damage to plaintiffs' properties. *Id.* at 55, 564 S.E.2d at 894.

An expert witness testified on behalf of the defendant and opined that the closing of the ditch had "an insignificant effect" on the plaintiffs' properties during the major storm events and that the flooding was due to "low elevation." *Id.* at 55, 564 S.E.2d at 894. The defendant argued that the plaintiffs had failed to present expert testimony to establish the element of causation. *Id.* at 57, 564 S.E.2d at 895. This Court stated, "[u]nlike the unusual circumstances in *Davis*, the facts of the instant case are such that a layperson could form an intelligent opinion about whether the flooding was caused by the closing of the ditch." *Id.*

This Court held that the plaintiffs had presented sufficient evidence to support the jury's verdict on the element of causation based upon testimony indicating: (1) one of the plaintiffs had owned his property since 1962 and had never experienced any flooding prior to the defendant closing the ditch in 1998; (2) once the ditch was closed the plaintiffs' land flooded "every time it rained[;]" (3) BNT properties did not flood during the rainstorms that accompanied Hurricanes Bertha and Fran in 1996, but following the closing of the ditch in June 1998, those properties flooded on several occasions; and (4) BNT was unable to rent the houses on its lots due to repeated flooding. *Id.* at 57, 564 S.E.2d at 895-96. Plaintiffs argue the reasoning in *BNT* controls the outcome of the case at bar. We agree.

Here, plaintiffs submitted sworn affidavits and averred that they had lived in their current residence for twenty-two years and had never experienced any flooding prior to the incident now at issue. Plaintiffs further asserted that "[their] yard, including the grade, was neither changed prior to nor has it been changed since the flood[.]"

It is undisputed that defendant performed construction work on John Russell Road directly in front of plaintiffs' residence prior to the flooding. Specifically, defendant resurfaced the road and reconstructed the shoulders. In order to reconstruct the shoulders of the road, "dirt" and "earth material" were used to "fill the gap between the new inch and a half of asphalt that's placed over the existing road and what is currently existing[.]" A project manager for defendants also admitted in his deposition testimony that no "erosion control fencing" was installed prior to or after the shoulder reconstruction.

On 27 September 2004, after a heavy rainstorm, plaintiffs discovered their basement was flooded with approximately one foot of water. Plaintiffs alleged: (1) the drainage ditch located in front of their property had been "filled in" and (2) that the cause of the flood was evidenced by a "path of debris, including dirt and asphalt, from the front of [their] house toward the backyard." Plaintiffs' allegations were substantiated by defendant's own employees. Three different employees acknowledged there was "runoff" onto plaintiffs' front lawn. Further, Patrick Stewart, a grade foreman for Blythe Brothers Asphalt, stated that at the time he arrived at plaintiffs' residence, "the [drainage] pipe was completely clogged up" and "full of debris." Defendant subsequently ordered the drainage ditch to be cleared. Since that time, plaintiffs have not experienced any type of flooding issue. Following the reasoning in *BNT*, this lay witness testimony is sufficient to raise an inference to support the element of causation.

However, defendant submitted the sworn affidavit of Steven W. Morris ("Morris"), a registered engineer, as an expert witness to testify on its behalf. Morris averred in his sworn affidavit that "[a]ny alterations of the ditch . . . would not have substantively changed the surface water runoff on the property [and] [n]o work performed by the [d]efendant . . . changed the surface water runoff at the rear of the [p]laintiffs' residence." Morris further averred "pre-existing conditions in the backyard of the [p]laintiffs' residence and/or a breach of the residence's waterproofing and/or ground water perking up through the joints in the basement slab" caused the flooding in plaintiffs' basement.

Because a conflict in the forecasted evidence exists, the question of causation created a genuine issue of material fact and should be submitted for a jury's determination. *See Bjornsson v. Mize*, 75 N.C. App. 289, 292, 330 S.E.2d 520, 523 (1985) ("There is a conflict in the forecasts of evidence offered by the parties. The plaintiffs offered affidavits from which a jury could find that the flooding was caused in part by the Mize development and in part by the downstream drainage system. In opposition to this showing the Mizes offered affidavits which tended to show that the flooding was caused entirely by an inadequate drainage system downstream from the plaintiffs' property. *The question of causation is a question of fact; therefore, the trial court erred in granting summary judgment in favor of the Mize defendants.*" (Emphasis supplied)).

## IV. Conclusion

Genuine issues of material fact exist regarding whether defendant was negligent in the reconstruction of John Russell Road and proximately caused the flood damage to plaintiffs' basement and its contents. The trial court erred by granting defendant's motion for summary judgment. The trial court's order is reversed. This matter is remanded for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

Judge HUNTER concurs.

Judge JACKSON dissents by separate opinion.

JACKSON, J., dissenting.

Because plaintiffs failed to specifically rebut defendant's expert testimony, I must respectfully dissent. I would affirm.

The majority is correct in stating that when a conflict in the forecasted evidence exists, there is a genuine issue of material fact that should be submitted to the jury for its determination. However, " '[o]nce the party seeking summary judgment makes the required showing [that an essential element of the opponent's case is non-existent], the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.' " *Wilkins v. Safran*, 185 N.C. App. 668, 672, 649 S.E.2d 658, 661 (2007) (quoting *Draughon v. Harnett County Bd. of Educ.*, 158 N.C.

App. 208, 212, 580 S.E.2d 732, 735 (2003) (quotations omitted), *aff'd*, 358 N.C. 131, 591 S.E.2d 521 (2004) (per curiam)). It is by this method that parties to a hearing on summary judgment establish that there is, or is not, a genuine issue of material fact.

Here, defendant provided expert testimony indicating that plaintiff could not prove the element of causation. Specifically, defendant provided an affidavit in which its expert concluded that in his opinion, "any work performed by [defendant] did not cause the basement flooding alleged by [plaintiffs] or the subsequent damage to [p]laintiffs' property." This conclusion was based on several underlying expert opinions:

4. Any alterations of the ditch on the Plaintiffs' property by the Defendant, Blythe Development Company, would not have substantively changed the surface water runoff on the property.

5. No work performed by the Defendant, Blythe Development Company, changed the surface water runoff at the rear of the Plaintiffs' residence.

6. Pre-existing conditions at the back basement door of the Plaintiffs' residence would have directed some surface water runoff towards the residence.

7. No work performed by the Defendant, Blythe Development Company, altered the pre-existing conditions at the back basement door of the Plaintiffs' residence.

8. Except for the pre-existing conditions noted in Number 6, the general grading at the Plaintiffs' property would be expected to direct surface water runoff away from the residence's back basement door such that surface water runoff from the front yard of the residence would not be directed towards the back basement door.

9. Any work performed by the Defendant, Blythe Development Company, did not alter the general grading at the Plaintiffs' property.

10. Whatever water was in the basement of the Plaintiffs' residence on or about September 27, 2004 was caused by the pre-existing conditions in the backyard of the Plaintiffs' residence and/or a breach of the residence's waterproofing and/or ground water perking up through the joints in the basement slab.

After having made this showing, it was incumbent upon plaintiffs to "produce a forecast of evidence demonstrating specific facts, as opposed to allegations," rebutting defendant's evidence.

In support of their motion for summary judgment, plaintiffs filed five affidavits—their own and those of family members. None of the affidavits forecast specific facts to rebut defendant's expert opinions. Therefore, plaintiffs failed to meet their burden to establish the existence of a genuine issue of material fact requiring summary judgment be denied. Having failed to meet this burden, the trial court did not err in granting summary judgment in defendant's favor. Therefore, I would affirm.