NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0635n.06

No. 12-6259

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 09, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BETH FREEMAN, Individually, and on behalf of all others similarly situated, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| *Plaintiff-Appellant*, | ) ) | |
| v. | ) ) | **O P I N I O N** |
| BLUE RIDGE PAPER PRODUCTS, Inc., | ) ) | |
| *Defendant-Appellee*. | ) | |

BEFORE:     COLE and COOK, Circuit Judges; KATZ, District Judge.[*]

KATZ, District Judge.  This is a class action for nuisance under North Carolina law in which the Plaintiff-Appellants, real property owners on the Pigeon River in Cocke County, Tennessee, appeal from the Eastern District of Tennessee's entry of summary judgment in favor of Defendant-Appellee Blue Ridge Paper Products, Inc. (hereinafter, "Defendant"), a paper mill located on the Pigeon River in North Carolina, twenty-six miles upriver from the Tennessee / Cocke County line. The district court held that Plaintiffs did not introduce sufficient evidence to prove causation, and therefore entered summary judgment in favor of Defendant.  We AFFIRM.

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

I.

Defendant operates a paper mill that is located on the Pigeon River in Canton, North Carolina. As part of its operations, and pursuant to "a lawful permit issued by the state of North Carolina under the auspices of the United States Environmental Protection Agency," Defendant discharges an effluent into the river that contains a laundry list of chemicals.[1]

Plaintiff class members are 300 real property owners in Cocke County, Tennessee, whose property sits along the Pigeon River approximately twenty-six miles downstream from Defendant's paper mill. Plaintiffs complain that the river in Cocke County is black or brown in color, that it emanates a foul odor and that it contains recurrent foam. Plaintiffs attribute the conditions to Defendant, and also claim to experience fear, stress, annoyance and anxiety as a result of Defendant's effluent. Plaintiffs therefore seek damages for nuisance under North Carolina law.[2]

Prior to the instant lawsuit, the same Plaintiffs brought a class action in Tennessee state court seeking North Carolina nuisance damages for a six year period covering June 1, 1999 through

---

[1]Chemicals in the effluent include aluminum, arsenic, barium, boron, chloroform, iron, lead, magnesium, manganese, mercury, nickel, nitrate, nitrogen, oil and grease, phenol, selenium, surfactants, sulfate, sulfite and titanium.

[2]The Clean Water Act preempts application of Tennessee's law in the instant matter. *See Int'l paper Co. v. Ouelette*, 479 U.S. 481, 494 (1987) (holding in a nuisance action that "the [Clean Water Act] precludes a court from applying the law of an affected State against an out-of-state source."). Application of North Carolina's nuisance law is not preempted, however, *see id*. at 497 ("nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the *source* state.") (emphasis in original), and the Clean Water Act does not prohibit a Tennessee court from exercising jurisdiction over a nuisance claim based on North Carolina law. *See id*. at 500 ("Nothing in the Act prevents a court sitting in an affected State from hearing a common-law nuisance suit, provided that jurisdiction otherwise is proper.").

August 16, 2005. That case resulted in a $2 million dollar jury verdict for Plaintiffs. *See generally Freeman v. Blue Ridge Paper Prods., Inc.*, 229 S.W.3d 694 (Tenn. Ct. App. 2007) (hereinafter "State Ct. Op."). Thereafter, Plaintiffs filed five separate lawsuits in Tennessee state court seeking nuisance damages for five consecutive six-month periods, the first of which began on August 17, 2005 (the day after the close of the prior suit). After a series of removals, remands and an appeal to this Court, *see generally Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405 (6th Cir. 2008) (finding Plaintiffs artificially broke-up the five cases to avoid CAFA, and that damages from each of the cases should therefore be aggregated), the cases were consolidated and ultimately landed in the U.S. District Court for the Eastern District of Tennessee as a class action for North Carolina nuisance covering a seven year period beginning on August 17, 2005, and running through the anticipated date of trial in 2011.

At the district court, Defendant moved for summary judgment on the basis of a "Failure of Proof and No Proximate Cause." In analyzing the motion, the district court held that, under the facts *sub judice*, North Carolina's nuisance law required Plaintiffs to: (1) prove that Defendant was the sole source or cause of the nuisance; and (2) prove causation by expert evidence. The district court took inventory of the parties' expert evidence as follows:

> First, the plaintiff disclosed John McElligott, M.D., F.A.C.P., M.P.H. as a medical doctor specializing in occupational health and safety. He was expected to testify to the genotoxic effect of the mill's effluent and the plaintiff's fear of the river's water. However, it is undisputed that Dr. McElligott has not tested the water in Tennessee. It is also undisputed that Dr. McElligott does not have any documents or materials that indicate what substances are in the water as it flows through Cocke County.
> Second, the plaintiff intends to call Mr. Jerry Clark, CSP, CIH, a certified industrial hygienist. Mr. Clark was expected to testify to the genotoxic effects of the

chemicals discharged by the mill. He admits, however, that he is "not aware of a scientifically designed, comprehensive environmental study of the quantity and concentrations of agents discharged in the Blue Ridge Paper Product, Inc. waste stream into the Pigeon River and their downstream concentrations or environmental fate." Further, he made no attempt to quantify the actual or theoretical risk to the health of the downstream receptors.

Third, the plaintiff had disclosed plans to offer Mr. David W. Weekley, RPIH, as a witness. Mr. Weekley is a registered industrial hygienist who was to address the empirical sampling of water extracted from the river at various locations. His testimony was to address the quality of the water as it flows past the plaintiff's property. However, the plaintiff withdrew Mr. Weekley's name as one of her experts in her amended expert disclosures of April 16, 2012. On this same date, the plaintiff disclosed a laboratory report entitled "Pigeon River Study." It set forth analysis of water samples drawn from the Pigeon river on April 11, 2012. Neither Dr. McElligott nor Mr. Clark have reviewed this study.

Defendant's expert reports that there are no human health, human welfare or ecological health concerns that can be related to the mill due to the water quality of the Pigeon River. This expert opines that many Tennessee tributaries, which do not meet Tennessee water quality standards, contribute to the river's color, foam and substantive makeup. Another defense expert would testify that the mill's discharge does not represent a threat to human health in the Pigeon River. He further opines that there are numerous other dischargers downstream from the mill that affect the river. This expert analyzed the plaintiff's April 16, 2012 report and concluded that the samples from the river raise no concern for human health, ecological health or aesthetics. He further concluded that influences other than the mill have a detrimental effect on the river, namely Waterville Lake, Bethel and Cosby Schools, Newport treatment facilities, and runoff from urban and agricultural areas.

District Court Mem. Op., R.304 at 2-3, Page ID 7120-21 (footnote omitted).[3]

After analysis, the district court entered summary judgment against Plaintiffs on all claims.

First, the court concluded that Plaintiffs failed to introduce the requisite expert proof of causation,

---

[3]Prior to summary judgment, the Eastern District of Tennessee Magistrate Judge granted Defendant's motion to exclude Dr. MicElligott's testimony. Despite this, the district court treated McElligott's testimony as admissible for purposes of judgment even though it had yet to rule on Plaintiffs' appeal from the Magistrate's ruling. The parties likewise include Dr. McElligott's testimony when arguing the instant appeal, and this opinion does the same.

noting that none of Plaintiffs' experts would testify that Defendant's effluent caused the color, odor or foam, nor that any of the chemicals from Defendant's effluent were even present in the river in Cocke County. *Id*. at 12. Second, the court found that the expert testimony Plaintiffs did offer—that Defendant's chemicals may cause genotoxic and carcinogenic effects, and that Defendant's discharges may reasonably harm economic and emotional well being—could not support an action. Specifically, Plaintiffs' experts would not testify that the chemicals at issue were present in Cocke County, or that they were otherwise present in quantities that would cause the risks complained of. Therefore, the court found that such testimony did not demonstrate a "scientifically verifiable risk," and was thus insufficient to defeat summary judgment. Plaintiffs appeal.

II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This Court reviews a district court's entry of summary judgment *de novo*. *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999).

III.

A.

The parties agree that "[t]o recover in nuisance [in North Carolina], [P]laintiffs must show an unreasonable interference with the use and enjoyment of their property." *Jordan v. Foust Oil Co., Inc.*, 447 S.E.2d 491, 498 (N.C. Ct. App. 1994). Plaintiffs contend, however, that the district court

contrived an erroneous standard of causation by requiring Plaintiffs to: (1) prove that Defendant was the sole source or cause of the nuisance; and (2) prove causation by expert evidence.

Plaintiffs are correct that North Carolina law does not require them to show that Defendant was the sole source or cause of the alleged nuisance. Neither the cases cited by the district court, nor any other North Carolina authority offered to this Court, support the proposition that Plaintiffs must show Defendant to be the sole source or cause. Indeed, the district court never actually applied this requirement to its analysis, and Defendant makes no argument in support of such a standard on appeal. Instead, Defendants correctly argue that any error in declaring a sole source requirement was harmless because the district court properly required proof of causation by expert evidence. *See* 28 U.S.C. § 2111 ("The court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); *Cox v. CSX Transp., Inc.*, No. 88-6235, 1989 U.S. App. LEXIS 15696, at *8 (6th Cir. Oct. 12, 1989) (citing *id.*).[4]

As to the second requirement imposed by the district court, it was proper to require a showing of expert evidence to prove causation, and was likewise proper to enter summary judgment against Plaintiffs' claims regarding the river's color, odor and foam. Expert evidence is required where "the subject matter . . . is 'so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion . . . .'" *Davis v. City of Mebane*, 512 S.E.2d 450, 453 (N.C. Ct. App. 1999) (quoting *Gillikin v. Burbage*, 139 S.E.2d 753,

---

[4]Plaintiffs also rely on Restatement (Second) of the Law of Torts § 840E cmt. c (1979), which tends to negate the district court's imposition of a sole source requirement. We need not address Plaintiffs' reliance on the Restatement, however, because it is unnecessary to resolve the sole source issue.

760 (N.C. 1964)). In determining whether expert evidence is required in this case, the district court examined five cases dealing with well-contamination and three cases dealing with flooding.

Regarding the well-contamination cases, the district court first cited *Masten v. Texas Co.*, 140 S.E. 89 (N.C. 1927). In *Masten*, the court did not require expert evidence when considering whether defendant's underground gasoline tank contaminated plaintiff's well because the tank was installed 130 feet upgradient from the well and was the only gas tank within a half mile or more of the well. *Id*. at 90. In *Wilson v. McLeod Oil Co.*, 398 S.E.2d 586 (N.C. 1990), the court did require expert evidence because defendants' underground gas tank was downgradient from plaintiffs' well, and the only expert in the case refused to say whether a lower aquifer would flow in the opposite direction. *Id*. at 602-03. In *Ammons v. Wysong & Miles Co.*, 431 S.E.2d 524 (N.C. Ct. App. 1993), the court, relying on *Wilson*, *supra*, held that an expert's testimony stating that contamination from manufacturing activity on an adjacent property *could* reach plaintiff's property was insufficient to avoid summary judgment. *Ammons*, 431 S.E.2d at 528-29. Yet, in *James v. Clark*, 454 S.E.2d 826 (N.C. Ct. App. 1995), plaintiffs avoided summary judgment by introducing expert testimony that identified defendant's site as the only source of contamination for plaintiff's well. *Id*. at 833. Finally, in *Ellington v. Hester*, 487 S.E.2d 843, 844 (N.C. Ct. App. 1997), plaintiffs' expert testimony did not defeat summary judgment because neither expert could say whether defendant's leaky underground gas tank–located "a couple hundred feet" upgradient from plaintiffs' well–was actually the source of contamination. *Id*. at 845-46. Also relevant was the fact that one of the experts was unable to determine the direction of ground water flow, and that a neighboring well was not contaminated. *Id*. at 846.

As to flooding cases, the district court first cited *Davis*, *supra*. In *Davis*, Plaintiffs relied solely on lay testimony to prove that an upstream hydroelectric dam was negligently designed such that it caused repeated flooding of plaintiffs' properties. 412 S.E.2d at 451-52. Despite lay testimony that there was no flooding prior to the dam's construction, the court found that the supposed changes in the watershed or in the downstream water flow were beyond the ordinary experience of the average man, and thus required explanation by expert evidence. *Id*. at 453. In *BNT Co. v. Baker Precythe Dev. Co.*, the court held that expert testimony was not required to show that defendant's deliberate filling of the downstream portion of a ditch–which ran from plaintiffs' property onto to defendant's adjacent property–caused plaintiffs' property to flood. 564 S.E.2d 891, 896 (N.C. Ct. App. 2002). Similarly, expert testimony was not required in *Banks v. Dunn*, 630 S.E.2d 1 (N.C. Ct. App. 2006), wherein lay testimony established that one could stand and watch the sixty-eight truckloads of fill dirt that defendant dumped on his property wash down a hillside, fill the stream separating plaintiff and defendant's properties, and flood plaintiff's land. *Id*. at 3-4. The *Banks* court distinguished *Davis*, *supra*: "Unlike *Davis*, the instant case does not involve a reservoir, a dam, or other large scale municipal water project; nor does it involve the interplay of water currents upstream and downstream of plaintiff's property; the calculation of water flow rates; consideration of rainfall rates; determination of the boundary of the 100 year flood plain; or any other complex calculation." *Id*. at 3.

Upon consideration of the above, the district court concluded that Plaintiffs must prove causation by expert evidence. Further, the district court found that because Plaintiffs did not offer

any expert evidence to show that Defendant caused the river's foul color, odor or foam, summary judgment must be granted as to those claims.

Plaintiffs contend on appeal that the district court's case law analysis was erroneous because it omitted one of North Carolina's most recent cases on expert testimony: *Smith v. Blythe Dev. Co.*, 665 S.E.2d 154 (N.C. Ct. App. 2008). Plaintiffs further argue that in any event, the lay testimony they offered was sufficient to analogize this case to those in which expert testimony was not required. Specifically, Plaintiffs cite lay testimony that the Pigeon River is clear above the mill, while it exhibits the same color, odor and foam immediately below the mill as in Cocke County. They also cite testimony of longtime residents who insist the river never exhibited a foul color, odor or foam prior to Defendant's operations. Moreover, Plaintiffs marginalize the fact that there is no water testing data evincing the presence of chemicals in Cocke County, relying instead on their expert's assertion that "everything goes downstream. It doesn't take a whole lot to figure that out." Despite these arguments, the district court properly concluded that the case's complexity requires expert evidence of causation.

First, whereas *Banks* and *BNT* involved the simple movement of water and dirt from one adjacent property to another—indeed, in *Banks* one could stand in place and see the cause and effect of the entire flood transpire—this case requires the fact finder to determine the fate of numerous chemicals after they traverse twenty-six miles down a river. Plaintiffs' reliance on the *Smith v. Blythe Dev. Co.* case does not change the analysis. *Smith* involved flooding caused by debris from a construction site located immediately in front of the plaintiff's house, *Smith*, 665 S.E.2d at 156, while this case involves the supposed effect of chemicals discharged into a river twenty-six miles

away. This distinction is not abrogated by the fact that the plaintiffs in *Smith*—like the Plaintiffs in this case—testified that they never experienced interference with their property prior to commencement of the defendant's activities.

Second, the district court properly observed that in addition to the complexity resulting from sheer distance, this case requires "the analysis of an effluent's composition, examination of other sources' discharges into the water, and the study of chemical reactions of various compounds present in water at various points . . . ." In sum, notwithstanding the lay testimony cited by Plaintiffs, the subject matter of causation in this case is far removed from the ordinary person's experience, *Davis*, 512 S.E.2d at 453, and the matter more closely parallels those cases in which North Carolina courts require expert proof of causation.

It should be noted that Plaintiffs passingly assert that there is scientific evidence in addition to lay testimony that links the color, odor and foam downstream with Defendant's discharges. Plaintiffs claim much of this scientific evidence comes from Defendant's experts, yet Plaintiffs do not point to any examples.

Plaintiffs also assert that Defendant did not point the district court to uncontroverted scientific evidence establishing that the odor, foam, and river color *did not originate* from the Mill. Plaintiffs focus especially on the credibility of Defendant's test data. While admitting Defendant's data consists of thousands of tests from hundreds of samples showing that none of the twenty-six miles of river contain chemical levels "above relevant standards" for human health, ecological well-being, or aesthetics, Plaintiffs contend the tests are unreliable because they only cover a five year period (2007-2011), instead of the entire seven year class period at issue (2005-2011). This

argument is unavailing, however, as it has no bearing on whether Plaintiffs satisfied their burden of demonstrating causation by expert evidence. If anything, Defendant's test data supports the conclusion that the matter is complex and requires expert evidence on the part of Plaintiffs.

Finally, Plaintiffs argue that they have created a dispute as to Defendant's defense of a superceding, intervening cause. While Defendant does briefly discuss this defense in its opposition brief, the issue is moot because Plaintiffs failed to satisfy their burden of producing expert evidence of causation.

### B.

Plaintiffs argue that even if expert evidence is required to prove causation, they introduced sufficient expert testimony to demonstrate a nuisance that derives from Plaintiffs' fear, stress, annoyance and anxiety. Specifically, Mr. Clark, Plaintiffs' expert industrial hygienist, reported that many of the chemicals in Defendant's effluent "are suspected of or known to cause genotoxic and/or carcinogenic effects." Clark therefore opined that Plaintiffs have "reasonable concerns regarding the safe use of and access to [the river,]" and that "these conditions may be causing a negative effect on the economic and emotional well being of [Plaintiffs.]" Moreover, Plaintiffs' other expert, Dr. McElligott, reported that the chemicals in Defendant's effluent "have the potential to cause a myriad of acute, chronic, and/or genotoxic health problems . . ." and that "it would be reasonable for any landowner on the Pigeon River . . . [to]have fear of being in contact with the water . . . ." Despite presenting expert evidence, the district court found that Plaintiffs' fear, stress, annoyance and anxiety was not actionable because, notwithstanding the expert testimony, Plaintiffs' fears were not rooted in "scientifically verifiable health risks," as there is no evidence that any of Defendant's chemicals

are or were in the river in Cocke County. The district court therefore entered summary judgment on these claims.

First, Plaintiffs assign error by insisting that the district court never addressed their fear-, stress-, annoyance- and anxiety-based injuries. A reasonable reading of the district court's opinion, however, belies this argument. After concluding an analysis finding that Plaintiffs did not offer the requisite expert proof as to color, odor and foam, the district court explicitly turned to "an additional argument" that derived from expert testimony on the potential genotoxic and carcinogenic health effects of the chemicals at issue. The district court did not expressly introduce its new analysis as implicating fear, stress, annoyance and anxiety, but it necessarily involved such claims by discussing Clark's and McElligott's opinions as to Plaintiffs' "emotional well being" and potential "fear" of Defendant's effluent.

Second, Plaintiffs argue that it was error to require that fear, stress, annoyance and anxiety derive from scientifically verifiable evidence. Plaintiffs maintain such fears are actionable so long as they are reasonable, regardless of whether they are rooted in scientifically verifiable evidence. Neither party offers definitive North Carolina authority on this issue, and we must therefore predict how North Carolina would resolve the matter. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004).

Plaintiffs urge the Court to rely on the Restatement (Second) of the Law of Torts § 821F cmt. f (1979), as well as W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 88, at 629 (5th ed. 1984), which respectively state: "In determining whether [significant harm] would be suffered by a normal member of the community, fears and other mental reactions common to the community

are to be taken into account, even though they may be without scientific foundation or other support in fact," Restatement 2d § 821F cmt. F; "[f]ears and feelings common to most of the community are to be considered . . . although there is no foundation in scientific fact." Prosser and Keeton § 88, at 629. Moreover, Plaintiffs stress that the Tennessee state court specifically rejected the notion that fear, stress, annoyance and anxiety must derive from scientifically verifiable health risks. *See* State Ct. Op., 229 S.W.3d at 711-12. Relying on Prosser and Keeton, the state court held that such fears must only be reasonable for Plaintiffs to maintain an action. *Id*.

We reject Plaintiffs' argument and affirm the district court's entry of summary judgment. In *Hedrick v. Rains*, 477 S.E.2d 171, 172 (N.C. 1996) (hereinafter, "*Hedrick* S. Ct. Op."), the North Carolina Supreme Court issued a two-sentence ruling that bears directly on Plaintiffs' argument: "PER CURIAM. The decision of the Court of Appeals is affirmed, but we note with disapproval the citation of the Restatement (Second) of Torts as authority. Except as specifically adopted in this jurisdiction, the Restatement should not be viewed as determinative of North Carolina law. AFFIRMED." *Id*. at 172.[5] Here, Plaintiffs concede that the Restatement and the Prosser and Keeton

---

[5]The court of appeals had affirmed summary judgment in favor of defendant sheriff's deputies in a wrongful death action that was premised on the theory that defendants negligently released an individual who later murdered plaintiffs' decedents. *Hedrick v. Rains*, 466 S.E.2d 281, 282 (N.C. Ct. App. 1996) (hereinafter, "*Hedrick* Ct. App. Op."). The court of appeals' opinion extensively discussed the Restatement. *See id*. at 283-84. Yet, North Carolina's public duty doctrine provided an avenue to affirm that was independent of the Restatement. *See Hedrick* Ct. App. Op., 466 S.E.2d at 284 (citing *Braswell v. Braswell*, 410 S.E.2d 897 (N.C. 1991) (discussing public duty doctrine); *Clark v. Red Bird Cab Co.*, 442 S.E.2d 75 (N.C. Ct. App. 1994) (discussing public duty doctrine)). This avenue presumably explains why the Supreme Court affirmed, in spite of its admonition that a significant part of the court of appeals' decision impermissibly relied on the Restatement.

sections on which they rely have not been adopted by the North Carolina Supreme Court. Plaintiffs argue, however, that despite *Hedrick*, North Carolina courts routinely rely on the Restatement as persuasive authority. *See Pendergrast v. Aiken*, 236 S.E.2d 787, 797 (1977) (Supreme Court referencing Restatement); *Taylor v. Nationsbank Corp.*, 481 S.E.2d 358, 361 (N.C. Ct. App. 1997) (acknowledging Supreme Court's admonition in *Hedrick*, but nevertheless relying on Restatement as persuasive authority). Indeed, one of the leading cases on which Plaintiffs and Defendant both rely for the basic definition of North Carolina nuisance law itself relies on the Restatement to develop that definition. *See Whiteside Estates, Inc. v. Highlands Cove, LLC*, 553 S.E.2d 431, 455-56 (N.C. Ct. App. 2001) (invoking Restatement to define North Carolina nuisance law). Plaintiffs also stress that the prior Tennessee state court case allowed recovery for fear, stress, annoyance and anxiety based on the reasoning in Prosser and Keeton. *See* State Ct. Op., 229 S.W.2d at 712.

While Plaintiffs have provided several examples of North Carolina courts' use of the Restatement as persuasive authority, it is precisely this sort of use that North Carolina's highest court castigated in *Hedrick*. 477 S.E.2d at 172. Moreover, whereas the cases cited by Plaintiffs involve use of the Restatement for basic legal principles, acceptance of the Restatement to allow for recovery of fear-based claims that are ungrounded in scientifically verifiable evidence is a sweeping declaration in support of which Plaintiffs have offered no North Carolina authority.[6] Indeed, when predicting state law, courts are obligated to proceed on the narrowest path possible, and "should be

---

[6]That the prior Tennessee state court case allowed recovery based on Prosser and Keeton is of no consequence. That opinion is binding neither on this Court, nor on North Carolina's jurisprudence.

- 14 -

extremely cautious about adopting 'substantive innovation' . . . ." *Combs*, 354 F.3d at 577-78 (quoting *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. Unit A 1980); *see also id*. at 577 (quoting *Todd v. Societe Bic, S.A.*, 21 F.2d 1402, 1412 (7th Cir. 1994)) ("Furthermore, 'when given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path.").

In sum, Plaintiffs' urged adoption of the Restatement and of PROSSER AND KEETON is expressly precluded by the North Carolina Supreme Court's *Hedrick* decision. Moreover, since Plaintiffs have offered no other authority suggesting that North Carolina would permit fear-, stress-, annoyance- and anxiety-based nuisance claims without a showing of scientifically verifiable evidence, we affirm summary judgment. Importantly, we need not declare that scientifically verifiable evidence is in fact required. Rather, because courts are obligated to follow the narrowest path possible, *Combs*, 354 F.3d at 577-78, and since Plaintiffs have offered no authority suggesting North Carolina would support a broader recovery, we decline to do so.

C.

Plaintiffs claim that the district court failed to attribute any causal significance to the prior Tennessee state court jury verdict. As a threshold matter, Defendant's assertion that Plaintiffs waived this argument by failing to raise it at the district court is belied by the record. *See* Plfs'. Summ. J. Reply ("[T]hough distinct in their "class periods," it cannot reasonably be suggested that [the state court verdict] has no bearing on this case . . . ."). Nevertheless, Plaintiffs' argument must be rejected.

At the outset, it should be noted that Plaintiffs do not specify what causal significance should be attributed to the state court verdict. Instead, they imply that since Defendant was held liable under evidence that closed on August 16, 2005, they naturally must be liable under evidence that opened on August 17, 2005. Such insinuation is insufficient, and in any event is moot because Plaintiffs did not introduce the requisite expert evidence of causation.

Plaintiffs' argument is not salvaged by their reliance on Fed. R. Evid. 404(b) as being "a rule of inclusion" that compels consideration of Defendant's prior acts as adjudicated by the Tennessee state court. First, Plaintiffs make no explanation of how Rule 404 is applicable to the instant matter. To the extent it is applicable, Plaintiffs' use of the Rule to show that "the prior act and the act being proved are one and the same" is violative of the Rule's express purpose. *See* Fed. R. Evid. 404(b) ("Evidence of a . . . wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

D.

When Defendant filed its motion for summary judgment, Plaintiffs filed an additional statement of seventy-nine disputed material facts pursuant to the district court's scheduling order. Defendant responded to the filing with a motion to strike, which was denied by the Magistrate. Thereafter, Defendant did not explicitly respond to each of the seventy-nine factual allegations in the same manner that Plaintiffs responded to Defendant's filing. Plaintiffs claim on appeal that the district court should therefore have deemed all seventy-nine facts admitted by Defendant. This argument is not persuasive. The district court's order did not require a response, and Plaintiffs point to no authority in the local rules, the Federal Rules of Civil Procedure, or otherwise, which suggests

that failure to respond constitutes and admission. In any event, the issue is moot because the district court properly concluded that Plaintiffs did not satisfy their burden of demonstrating causation by expert testimony.

IV.

For the foregoing reasons, we AFFIRM the district court's entry of summary judgment in favor of Defendant.